884 F.2d 145
 19 Bankr.Ct.Dec. 1229, Bankr. L. Rep. P 73,164
 In re KNIGHTSBRIDGE DEVELOPMENT CO. INC., Debtor.
SAVERS FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant,
H. Jason Gold, Trustee-Appellant,
v.
McCARTHY CONSTRUCTION COMPANY, Defendant-Appellee.
 No. 88-2942.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 8, 1989.
Decided Sept. 1, 1989.
 
 Benjamin C. Ackerly, Sr. (Tyler P. Brown, Jeffrey L. Tarkenton, Hunton & Williams, Richmond, Va., Bennett A. Brown, Gilliam, Sanders & Brown, Fairfax, Va., on brief), for appellants.
 Lisa N. Speers (Laurence Schor, Schnader, Harrison, Segal & Lewis, Washington, D.C., on brief), for defendant-appellee.
 Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and KAUFMAN, Senior District Judge for the District of Maryland, sitting by designation.
 ERVIN, Chief Judge:
 
 
 1
 Savers Federal Savings and Loan Association, a creditor of the bankrupt Knightsbridge Development Company, Inc., commenced this adversary action in bankruptcy for a declaratory judgment that two acts beneficial to another creditor, McCarthy Construction Company, were void under the automatic stay. The bankruptcy court granted summary judgment in favor of McCarthy, and the district court affirmed. We conclude that one of the challenged acts, an arbitration award to McCarthy, violated the automatic stay, and reverse and remand for a declaration voiding the award.
 
 I.
 
 2
 Knightsbridge owned and developed the Atrium, an Arlington, Va., condominium complex. McCarthy was the general contractor for the Atrium construction project, for which Savers led a consortium of lenders.
 
 
 3
 Savers began foreclosure proceedings against the Atrium after Knightsbridge defaulted on its construction loan and on amounts due McCarthy. On January 5, 1987, McCarthy and allied creditors filed a petition for Knightsbridge's involuntary Chapter 7 bankruptcy. Savers received relief from the stay allowing it to proceed with foreclosure. At the April 29, 1987, sale, Savers, the sole bidder, bought the Atrium for $24 million. The property remained subject to a number of mechanics' liens.
 
 
 4
 Long before it halted construction for nonpayment, McCarthy submitted several extras claims to Knightsbridge, notifying Savers of each. Knightsbridge concurred in some of the claims, incorporating them into the contract via change orders, and disputed others. The disputes prompted McCarthy to file a mechanic's lien against the Atrium on February 27, 1985. On March 24, 1985, Knightsbridge brought an action to clear the lien. On March 29, 1985, the Arlington County Circuit Court ordered the lien cleared from the records. The Virginia Supreme Court granted McCarthy's appeal on January 21, 1986 and, on April 22, 1988, well after the bankruptcy and district court opinions in this case, ordered the lien reinstated.
 
 
 5
 McCarthy did not seek a stay of the Circuit Court's order pending appeal. McCarthy did, however, file a lis pendens in Arlington County on February 18, 1986. The lis pendens notified prospective Atrium purchasers of the Supreme Court appeal and the potential for reinstatement of McCarthy's lien. On March 13, 1986, McCarthy filed its first amendment to the lis pendens, notifying searchers that it had reduced its claim after receiving partial payment from Knightsbridge.
 
 
 6
 McCarthy filed Knightsbridge's Chapter 7 petition at 3:43 P.M. on January 5, 1987. McCarthy claims that a legal assistant from its law firm filed a second amendment to the lis pendens, increasing the disputed amount from $538,710.00 to $4,123,487.00, about 3:30 P.M. that day. The increase reflected an anticipated arbitration award in McCarthy's favor, about which more follows shortly. There is no dispute that the amendment was not recorded until the next morning and that, under Va.Code Sec. 8.01-268(A), the amendment did not bind bona fide purchasers without actual notice of its terms until recorded.
 
 
 7
 The validity of the second amendment to McCarthy's lis pendens is the first nub of contention in this case. The second is the validity of the arbitration award that underlay McCarthy's increased mechanic's lien claim.
 
 
 8
 About September 12, 1985, McCarthy delivered a Composite Claim Submittal to Knightsbridge. The Submittal amalgamated extras claims from McCarthy and its major subcontractors. Knightsbridge rejected the Submittal, and on October 15, 1985, McCarthy filed a Demand for Arbitration with the American Arbitration Association.
 
 
 9
 A three-arbitrator panel heard twenty-nine days of testimony on McCarthy's side of the case from spring through fall of 1986. On October 2, 1986, Knightsbridge's lawyers withdrew after their client failed to pay a large part of its bill. Shortly after, McCarthy says that Savers contacted it about suspending the arbitration to allow the two interested parties to negotiate a settlement. McCarthy agreed, but the parties were unable to settle.
 
 
 10
 Notwithstanding McCarthy's impression that the arbitration proceeding was in abeyance, the panel bore on. In a January 5, 1987, letter, it informed the parties that:
 
 
 11
 The arbitrators have completed receiving the testimony of McCarthy Construction Company as of January 5, 1987. The record in this matter will remain open until 5 p.m. on January 9, 1987, for any submission from Knightsbridge, the guarantor or the lead lender.
 
 
 12
 The record will be closed as of that date, and the award due within thirty days.[1]
 
 
 13
 As we have noted, January 5, 1987, was the day Knightsbridge entered bankruptcy. Knightsbridge, which had interposed counterclaims in the arbitration, and Savers claim they remained quiescent after receiving the panel's letter out of respect for the automatic stay.
 
 
 14
 On February 4, 1987, the panel awarded McCarthy $3,855,413.00. On July 27, 1987, Savers commenced this action to declare the arbitration award and the second amendment to McCarthy's lis pendens void for violating the automatic stay. Bennett A. Brown, then Knightsbridge's trustee, intervened as a plaintiff.[2]
 
 
 15
 Both parties moved for summary judgment. The bankruptcy court granted McCarthy's and denied Savers' motions, holding that neither act violated the automatic stay. The district court, applying a clearly erroneous standard, affirmed. Savers has appealed.
 
 II.
 
 16
 We shall analyze the validity of the amendment to the lis pendens and of the arbitration award separately, beginning with the amendment.[3]
 
 A.
 
 17
 We have little trouble concluding that McCarthy's second amendment to the lis pendens, possibly filed before but certainly recorded after Knightsbridge entered bankruptcy, did not violate the automatic stay. Although no case of which we are aware treats the validity of a post-petition filing of an original or amended lis pendens, the language of 11 U.S.C. Sec. 362, the statute creating the automatic stay, and cases respecting pre-petition filings convince us that the amendment was a legitimate post-petition activity.
 
 
 18
 The bankruptcy court cited its decision in In re Hart, 24 B.R. 821 (Bkrptcy E.D.Va.1982), which validated a lis pendens filed five months before bankruptcy, to support its conclusion that the "simple existence of the lis pendens without more does not and cannot violate Section 362." We agree that Hart is instructive, if not dispositive, in implying that a lis pendens, original or amended, is not within the eight categories of activity proscribed by Sec. 362(a). We elaborate our rationale in some detail to indicate why we believe this case, certainly distinguishable from Hart in revealing a post-petition filing by a creditor, warrants a similar conclusion.
 
 
 19
 We are well aware that Sec. 362(a)'s general purpose is to thwart post-petition collection efforts that could disrupt the orderly and equitable process of debt satisfaction contemplated by the Bankruptcy Code. See 2 Collier on Bkrtcy 362.01 (L. King 15th ed. 1989). The fundamental problem for Savers, in our view, is that the amendment simply had no effect on the bankruptcy estate, and was hence innocuous under Sec. 362(a). The lis pendens noticed a distinct proceeding, without operating to satisfy or secure the claim that inspired it. See Green Hill Corp. v. Kim, 842 F.2d 742, 744 (4th Cir.1988) (lis pendens not equivalent to a lien under Virginia law). The notice did not interfere with Savers' possession of or control over the Atrium and, though intended to inform prospective purchasers of a potential encumbrance, was not an "exercise of control" over the property. 11 U.S.C. Sec. 362(a)(3); see In re Zartun, 30 B.R. 543 (Bankr. 9th Cir.1983) (suggesting, based on the legislative history, that Sec. 362(a)(3) mainly prohibits self-help repossession); In re Millerlee Corp., 70 B.R. 780, 783 (Bankr.S.D.N.Y.1987); cf. 2 Collier on Bkrtcy 362.04 (suggesting a broader, though not, for our purposes, pertinent, scope for Sec. 362(a)(3)).
 
 B.
 
 20
 The issue for us is whether the post-petition arbitration award reflects "the continuation ... of a ... proceeding against the debtor that was ... commenced before the commencement of the [bankruptcy] case...." 11 U.S.C. Sec. 362(a)(1). We may approve the award as valid under the stay only if the panel decided it in word and deed before January 5, 1987, leaving for post-petition achievement only the clerical act of recording the award. See Ellison v. Northwest Eng'g Co., 707 F.2d 1310 (11th Cir.1983); Teachers Ins. and Annuity Ass'n v. Butler, 58 B.R. 1019, 1022 (S.D.N.Y.) (describing the post-petition filing of a judgment drafted and signed pre-petition as "a purely ministerial act" not stayed under Sec. 362(a)(1)), aff'd, 803 F.2d 61 (2d Cir.1986); but see In re Wilson, 72 B.R. 956, 958 (Bankr.M.D.Fla.1987) (offering, in a dictum, that the stay would not halt proceedings as to a matter a court takes "under advisement" pre-petition).
 
 
 21
 The bankruptcy court's decision was that by the time McCarthy filed the Chapter 7 petition, "all the evidence had been presented that was going to be presented. One of the parties decided to stop in midstream or did not file further evidence and [the court is] aware of the fact that [the proceeding] may have remained open to take further evidence but none was presented.... [The court's] ruling is that the rendering of an opinion by the [panel] is a ministerial function tantamount to a ruling by a Court and, therefore, is not a violation of the automatic stay, all of the evidence having been presented at that point." Our reading of the case law persuades us that the bankruptcy decision, suggesting as it does that the arbitration remained open after Knightsbridge entered bankruptcy, took a wrong turn in attending only to the parties' inactivity, rather than the panel's activity, after the crucial date.
 
 
 22
 In Ellison, the court stayed issuance of its decision because the appellee had gone into Chapter 11 bankruptcy after the case had been briefed and argued. The Eleventh Circuit noted that while "there are strong policies favoring and virtually none opposing [our] entering [a] decision", policy considerations played no role in its application of the strict language of Sec. 362(a)(1). 707 F.2d at 1311. Ellison implies, and we agree, that no matter the investment it and the parties may have in the proceeding, a tribunal must halt its deliberations once bankruptcy intrudes.
 
 
 23
 The arbitration panel's January 5, 1987, letter makes clear that its appraisal of the case could not begin until January 9, a message corroborated by the month that elapsed between the last submission of evidence and publication of the award. We have no doubt, on this evidence, that the panel must therefore have conducted most, and perhaps all, of its deliberations after January 7, 1987. According to the plain sense of Sec. 362(a)(1) and case law that condones only rote post-petition activity, the bankruptcy court ought to have declared the arbitration award void as the product of a continuing pre-petition proceeding. We remand for the entry of such a declaration.
 
 III.
 
 24
 We believe the district court was correct in affirming summary judgment as to the amendment to the lis pendens, but erred in concluding that the arbitration award was valid in the face of the automatic stay. We therefore reverse and remand with instructions to void the award for violating the stay.
 
 
 25
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 A letter from the tribunal to the parties dated November 18, 1986, indicates that hearings were scheduled for January 5-9 and January 12-16, 1987. These hearings would occur, though, only if the parties notified the tribunal by December 15, 1986, that they had not reached a settlement. Although no settlement occurred, we do not know whether the parties timely notified the tribunal of this
 
 
 [2]
 Appellant H. Jason Gold at some point replaced Brown
 
 
 [3]
 Though the district court applied a clearly erroneous standard in its review, invoking Bankruptcy Rule 8013 and through it Fed.R.Civ.P. 52, we believe de novo review is appropriate for this disposition on summary judgment, which includes no findings of fact or reference to Rule 8013. Bankr.Rule 7056; Fed.R.Civ.P. 56