*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  12b0005n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:   JONATHAN M. WEBB, | ) | |
| | ) | |
| Debtor. | ) | No. 11-8016 |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division, at Cleveland.
Bankruptcy Case No. 07-13703

Argued:  February 7, 2012

Decided and Filed:  April 9, 2012

Before:  EMERSON, FULTON, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Harvey S. Morrison, Cleveland, Ohio, for Appellants.  Kenneth J. Freeman, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Harvey S. Morrison, Cleveland, Ohio, for Appellants.  Kenneth J. Freeman, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

C. KATHRYN PRESTON, Bankruptcy Appellate Panel Judge.  The appellants in this matter, Marilyn Polster and Richard D. Eisenberg (collectively "the Appellants"), appeal an order of the bankruptcy court entered February 4, 2011 (the "Sanctions Order"), imposing sanctions against them in the amount of $4405.23 for their willful violation of the automatic stay.  The sanctions are based

on an earlier order in which the bankruptcy court found the Appellants in contempt for continuing to prosecute a state-court foreclosure action against the Debtor's residence post-petition.

For the reasons that follow, we affirm the order of the bankruptcy court.

## I.   ISSUES ON APPEAL

The issues presented in this appeal are (1) whether the doctrine of *lis pendens* precluded the subject property from becoming part of the Debtor's bankruptcy estate such that the bankruptcy court should not have found the Appellants in contempt or imposed sanctions, and (2) whether the bankruptcy court's failure to conduct an evidentiary hearing on the issue of damages prior to awarding sanctions resulted in a denial of due process to the Appellants.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit (the "Panel") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel and no party has timely elected to have this appeal heard by the district court.  28 U.S.C. § 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the  judgment."  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

Although the bankruptcy court in this case originally found the Appellants in contempt on July 20, 2007, that order was not final until the sanctions were imposed on February 4, 2011. *Wicheff v. Baumgart* (*In re Wicheff*), 215 B.R. 839, 843 (B.A.P. 6th Cir.1998) (citing *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.* (*In re U.S. Abatement Corp.*), 39 F.3d 563, 567 (5th Cir. 1994) ("A civil contempt order is final when '(1) a finding of contempt is issued, and (2) a sanction is imposed.' ")).  Consequently, the Sanctions Order completely resolved the contempt issues between the parties and made the order of contempt, as well as the imposition of sanctions, final and appealable.  *U.S. Abatement Corp.*, 39 F.3d at 567; *see also Mueller v. Hall* (*In re Parker*),

2007 WL 1376081, at *1 (B.A.P. 6th Cir. 2007). The notice of appeal filed by the Appellants on February 14, 2011, was, therefore, timely.

"The sanction or remedy imposed by the bankruptcy court for violation of the automatic stay is reviewed for an abuse of discretion." *Transouth Fin'l Corp. v. Sharon* (*In re Sharon*), 234 B.R. 676, 679 (B.A.P. 6th Cir. 1999) (citing *United States v. Mathews* (*In re Mathews*), 209 B.R. 218 (B.A.P. 6th Cir. 1997)). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288 (B.A.P. 6th Cir. 2008). Under this standard, the bankruptcy court's decision will only be disturbed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)); *see also Mayor and City Council of Baltimore, Md. v. W. Va.* (*In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002) ("An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.'") "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000).

## III. FACTS

Although the procedural history of this case is long and somewhat confusing, the facts are essentially undisputed. On June 13, 2003, Marilyn Polster and Edward Polster (collectively "Polsters"), obtained a state court judgment against the debtor, Jonathan M. Webb ("Debtor"), and his mother, Beverly J. Webb, jointly and severally, in the amount of $10,000. On June 20, 2003, the Polsters filed a certificate of judgment in the county records, thereby obtaining a judgment lien against real estate located at 902 Barkston Drive, Highland Heights, Ohio ("Barkston Property") for the judgment amount. At the time the lien attached, the Barkston Property was titled solely in Beverly Webb's name.

The Polsters commenced an action to foreclose the judgment lien on the Barkston Property on September 12, 2003, and Beverly Webb was served with process on September 24, 2003. On August 9, 2006, Beverly Webb transferred the Barkston Property to the Debtor by Quitclaim deed. A Sheriff's sale was set for May 21, 2007; however, the Debtor filed his chapter 13 petition for bankruptcy relief that same day and the sale was cancelled.

The Debtor listed the Polsters' judgment lien on Schedule D and listed the Polsters on his mailing matrix. The Polsters were served with notice of the Debtor's § 341 meeting of creditors by first class mail on June 10, 2007. On July 5, 2007, they were served with a copy of the Debtor's proposed chapter 13 plan which provided for payment of the Polsters' lien in full. The Polsters do not deny having notice of the Debtor's bankruptcy filing.

At some point after the Debtor filed his bankruptcy petition, Marilyn Polster's ("Polster") attorney, Richard D. Eisenberg ("Eisenberg"),[1] filed a motion with the state court to reset the Sheriff's sale of the Barkston Property. Eisenberg filed the motion without seeking or obtaining relief from automatic stay. The Debtor's attorney sent a letter to Eisenberg on June 22, 2007, notifying him that moving to have the sale reset violated the automatic stay. On July 13, 2007, the Debtor received notice that the Sheriff's sale had been reset for July 23, 2007.

On July 17, 2007, the Debtor filed an emergency motion requesting the bankruptcy court to hold Polster and Eisenberg in contempt for violating the automatic stay and for an order enjoining the Sheriff's sale ("Contempt Motion").[2] The Debtor asked the bankruptcy court to impose $2500 in compensatory damages, $1925 in attorneys fees and $12,500 in punitive damages as sanctions against the Appellants for their violation of the automatic stay. In support of his request for $1925

---

[1]At the time of the initial hearing in the bankruptcy court, the Appellants' counsel informed the court that Edward Polster was deceased. As a result, the orders in the bankruptcy court were issued only against Marilyn Polster and her attorney, Richard D. Eisenberg.

[2]There is nothing in the record or in the briefs in this appeal which indicates whether the Polsters asked Eisenberg to reset the sheriff's sale in state court or if Eisenberg undertook that action on his own. Regardless, the Appellants admit receiving notice of the Debtor's bankruptcy case. See note 5 infra for further discussion of this issue.

in attorneys fees, the Debtor attached an itemized billing statement from his attorney for all services rendered as of July 17, 2007.

Webb filed a notice of hearing on July 17, 2007, which stated that a hearing on his Contempt Motion would be held on July 19, 2007 (the "Contempt Hearing"). According to the certificate of service, this notice was served on the Appellants. The Appellants filed a response to the Debtor's Contempt Motion, in which they alleged the automatic stay did not apply to the Barkston Property because the Barkston Property was not property of the estate by virtue of the Ohio *lis pendens* statute.

The Appellants seemed to vacillate between two main theories to support their position that the Barkston Property was not property of the estate. First, the Appellants argued that because the Polsters had already recorded their lien against the property and commenced the foreclosure action, Beverly Webb had no interest in the Barkston Property at the time she conveyed it to the Debtor. Consequently, according to the Appellants, the Debtor had no interest in the property when he filed his bankruptcy petition:

> [Beverly Webb] could only convey that which she had. As of the date of transfer, under the rule of *lis pendens* the Polster lien was absolute and a third party could not acquire a superior interest and took subject to it. § 2703.26 Ohio Revised Code. By analogy, if Mrs. Webb had conveyed the Terminal Tower[3] to the Debtor, it would be as much a part of the bankruptcy estate as the interest presently being foreclosed in the Cuyahoga Common Pleas Court.

"Mem. Contra to the Emergency Mot. of Jonathan M. Webb for Order of Contempt and Further Orders" at 3, Bankr. Case No. 07-13703, ECF No. 24; *see also* July 19, 2007 Tr. of Contempt Hr'g at 14, Bankr. Case No. 07-13703, ECF No. 115. The Appellants then seemed to abandon this argument and instead asserted that, regardless of whether the debtor had any legal or equitable interest in the property, the doctrine of *lis pendens* prohibited the property from becoming part of the bankruptcy estate:

---

[3]Terminal Tower is a landmark skyscraper in downtown Cleveland, Ohio.

Your Honor, on October 4th, 2000, Judge Speer ruled in the case of [*In re Ochmanek*, 266 B.R. 114 (Bankr. N.D. Ohio 2000)] that *lis pendens* precluded an asset from coming into the bankruptcy case.

July 19, 2007 Tr. of Contempt Hr'g at 17, Bankr. Case No. 07-13703, ECF No. 115.

The Appellants closed their response with the bare statement: "**AN EVIDENTIARY HEARING IS REQUESTED**." Despite this request, the Appellants failed to make any allegation as to how such a hearing would aid the bankruptcy court in its decision nor did they set forth any legal support for their request.

The bankruptcy court disagreed with the Appellants' arguments and concluded that there were no provisions in the Bankruptcy Code, under either § 362(b) or § 541(b) or (c)(2), which excepted property subject to *lis pendens* from property of the estate or from the protections of the automatic stay.

> Respondents [sic] argument is not well-premised. The only case cited by Respondents, *In re Ochmanek*, 266 B.R. 114 (Bankr. N.D. Ohio 1999), did not address the issue of whether property subject to a *lis pendens* becomes property of a debtor's estate. Instead, that case involved a motion of the debtors to avoid a judgment lien pursuant to 11 U.S.C. § 522(f) on the basis that the judgment lien impaired their homestead exemption. The court applied the doctrine of *lis pendens* and determined that a mortgage interest, which had been recorded after the *lis pendens* and start of the foreclosure action by the judgment creditor, did not take priority over the judgment creditor's lien. *Id.* at 123. There was no indication by the court that the automatic stay was inapplicable because the property was not property of the estate.
>
> Herein, the Debtor does not dispute that he took title to the Barkston Property subject to Respondent Polster's judgment lien. In fact, Debtor's proposed plan includes payment to Respondent Polster. However, the fact that the Debtor took the property subject to the judgment lien, does not affect whether the Barkston Property is property of the Debtor's estate.

"Mem. Op. and Order" at 4, Bankr. Case No. 07-13703, ECF No. 26. The bankruptcy court issued a memorandum opinion and order on July 20, 2007, granting the Debtor's motion and finding the Appellants in contempt for proceeding with the state court foreclosure sale ("Contempt Order").[4]

---

[4]Although the Appellants have never raised the issue of whether the Polsters can be held jointly liable with Eisenberg under § 362(k), there is authority for such shared liability. Under "general principles of agency law . . . a creditor-principal is liable under § 362(k) for the acts of an

The bankruptcy court also enjoined the Sheriff's sale scheduled for July 23, 2007,[5] and issued a separate order for the Appellants to appear and show cause why they should not be sanctioned for violating the automatic stay ("Show Cause Order").

On July 23, 2007, the Appellants filed a motion for reconsideration of the Contempt Order "to the extent that the Court found [Polster and Eisenberg] intentionally and willfully violated the stay provisions of 11 U.S.C. § 362." The Appellants also renewed their request for an evidentiary hearing on the issue of their alleged "stay violation and susceptibility to sanctions." They did not, however, seek reconsideration of that portion of the order enjoining the sheriff's sale because they had already asked the sheriff to cancel the sale. The Appellants stated that they believed "that a bona fide question exists as to the applicable law governing the underlying fact situation which would impact upon the question of stay violation and susceptibility to sanctions." Because the bankruptcy "[c]ourt swore in no witnesses and took no evidence, although an evidentiary hearing had been requested," the Appellants asserted they were entitled to an evidentiary hearing on the issue of their alleged violation of the stay.

The Debtor filed a response to the motion for reconsideration, in which he alleged that the Appellants had not demonstrated any cause under Federal Rule of Civil Procedure 59(e) for reconsideration of the bankruptcy court's order. The bankruptcy court conducted a hearing on the motion to reconsider and the Debtor's response thereto on August 16, 2007.

On September 24, 2007, the bankruptcy court entered an order denying the Appellants' motion for reconsideration:

---

agent [i.e., an attorney] who willfully violates the automatic stay taken when those acts are within the scope of their principal-agent relationship." *Theokary v. Abbatiello* (*In re Theokary*), 444 B.R. 306, 323-24 (Bankr. E.D. Pa. 2011) (collecting cases); *Haile v. N.Y. State Higher Educ. Servs. Corp.*, 90 B.R. 51, 55 (W.D.N.Y. 1988); *In re Waswick*, 212 B.R. 350, 352 (Bankr. N.D. Ind. 1997); *see also In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000) ("Courts have imposed joint and several liability against creditors and their counsel for willful stay violations.").

[5]Because of a delay in delivery of the bankruptcy court's Contempt Order to the state court, the foreclosure sale scheduled for July 23, 2007, went forward. Upon learning of this sale, Eisenberg filed a motion in state court to set aside the foreclosure sale and the state court subsequently did so.

> Movants [sic] request for reconsideration is not well-premised. The facts underlying the Debtor's Motion to enjoin the sale of his home and find Movants in contempt were not in dispute. Movants did not dispute that they had notice of the Debtor's filing but continued to prosecute the state foreclosure action. In fact, at the hearing on the Debtor's Motion to enjoin the sale, Movants justified their continued prosecution based on their belief that the Debtor's personal residence was not property of the estate. An evidentiary hearing would not have assisted the Court in deciding the Debtor's Motion to enjoin the sale of his home. *See Socialist Workers Party v. Illinois State Bd. of Elections*, 566 F.2d 586, 587 (7th Cir. 1977) (where nothing in the offer of proof, if proved, would have altered the result, the district court did not abuse its discretion in granting a preliminary injunction without an evidentiary hearing.)

"Memo.of Op. and Order" at 3, Bankr. Case No. 07-13703, ECF No. 59.

On August 21, 2007, the Debtor filed a response to the Show Cause Order in which he amended his request for sanctions to delete the $2500 in compensatory damages and $12,500 in punitive damages and to amend his request for attorneys fees from $1925 to $4405.23. This amount consisted of attorney's fees and costs from June 20 through August 16, 2007. The Debtor attached an itemized statement of attorney's fees as an exhibit to his response. The statement covered eighteen hours of work at the rate of $250.00 per hour for work done by counsel for the Debtor, and $175.00 per hour for work done by an associate. The first service listed on the itemized statement was drafting of the letter to Eisenberg informing him that resetting the Sheriff's sale violated the automatic stay. The last service listed on the statement was time spent preparing for the hearing on the Appellants' motion for reconsideration of the Contempt Motion. The Appellants did not object to the requested amount of attorney's fees or the exhibit. All of the charges described on the statement were for work done on the Contempt Motion, Show Cause Order and the Appellants' motion to reconsider.

Although initially set for August 23, 2007, the Show Cause Order was continued several times and eventually heard on November 8, 2007. Neither Polster nor Eisenberg appeared at the hearing. When asked why his clients were not present at the show cause hearing, the Appellants' attorney stated,

> Your Honor, the understanding, the impression that I had when I left the courtroom on the 18th of October was if we had no settlement with Mr. Freeman [Debtor's

attorney] the Court would set an evidentiary hearing. I'm here to report there's been no settlement with Mr. Freeman.

Nov. 8, 2007 Tr. of Hr'g at 3, Bankr. Case No. 07-13703, ECF No. 114. Debtor's attorney concurred with the representation that if the matter was not settled after the October 2007 hearing was adjourned, the bankruptcy court would continue it to November 8, 2007; however, Debtor's attorney further stated that "[i]t was my recollection that if the matter was not resolved then the Court would issue a ruling based on what had been filed but that [the Appellants] were still ordered to appear today." *Id*. The bankruptcy court then stated that "sanctions will be issued and the Court's order will issue in that regard." *Id.* at 4.

Despite the bankruptcy court's indication at the November 2007 hearing that a sanctions order would be issued, it was not until the Debtor filed a motion on October 27, 2010 ("Sanctions Motion") that the bankruptcy court took up the issue of the appropriate sanctions. The Appellants filed an objection to the Sanctions Motion on November 17, 2010, and again requested an evidentiary hearing on the issue of the alleged stay violation.

The bankruptcy court conducted an initial hearing on the Debtor's Sanctions Motion on November 18, 2010. At that hearing, Debtor's attorney stated that

> Your Honor, this matter was originally scheduled and the Court had issued an order and an order of sanctions was supposed to be issued. [The Appellants' counsel] filed an appeal of the Debtor's order confirming the plan.[6] That appeal was eventually dismissed for lack of prosecution. The purpose of this motion was to bring back to the Court's attention that there was an order that was entered and the matter was heard and submitted. But the Court never issued an order. And that order wasn't issued, I believe, because of the appeal that was filed by [the Appellants' counsel] on behalf of Marilyn Polster and Richard Eisenberg.
>
> . . .

---

[6]In her objection to confirmation, Polster alleged that the Debtor was attempting to hinder, delay, and defraud Polster and prevent her from recovering on her judgment lien. Polster also alleged that the Debtor was not proposing to submit all his disposable income to the plan and that the Debtor's schedules did not disclose all of his income. The bankruptcy court overruled Polster's objection and confirmed the Debtor's plan. Polster's appeal of the order overruling her objection to confirmation was dismissed by the BAP on February 4, 2008 (BAP case number 07-8070) for want of prosecution.

> And that appeal was dismissed for lack of prosecution. . . . So therefore, I believe that the Court's original order where it said everything had been heard and submitted is now ripe for decision, whatever the Court's decision may be with respect to sanctions.

Nov. 18, 2010 Tr. of Hr'g at 1-2, Bankr. Case No. 07-13703, ECF No. 113. At the conclusion of that hearing, the bankruptcy court stated it would review the matter and determine whether any further hearing would be necessary. On January 6, 2011, the bankruptcy court reset the Debtor's Sanctions Motion to January 27, 2011.

The Debtor's attorney filed a certification on January 7, 2011, in which he certified that the attorneys' fees and expenses in connection with the Contempt Motion and the Show Cause Order were $4405.23. The Appellants did not object to the certification.

At the January 27, 2011 hearing, the Debtor's attorney informed the court that he had filed a certification of fees and expenses. The Debtor's attorney then asked the court to issue an order as to the amount of sanctions to be imposed against the Appellants. Jan. 27, 2011 Tr. of Hr'g at 2. Counsel for the Appellants renewed his motion for an evidentiary hearing. The court then took the matter under advisement.

The bankruptcy court issued an order granting the Debtor's Sanctions Motion on February 4, 2011. The bankruptcy court stated it had reviewed the certification of fees submitted by the Debtor's counsel and found that to be "sufficient proof of the Debtor's damages, and, accordingly, an evidentiary hearing is unnecessary." Because the Debtor had demonstrated he had been injured by the Appellants' willful violation of the automatic stay, the bankruptcy court concluded he was entitled to recover actual damages pursuant to 11 U.S.C. § 362(k).

The Appellants timely filed a notice of appeal of the Sanctions Order.

## IV.    DISCUSSION

**A.    11 U.S.C. §§ 362(a) and 541(a), and Ohio Rev. Code 2703.26**

The Appellants in this case have alleged that the doctrine of *lis pendens*, as set forth in Ohio Revised Code 2703.26, precluded the Barkston Property from becoming property of the estate under 11 U.S.C. § 541 and, therefore, the provisions of 11 U.S.C. § 362(a) did not prohibit them from proceeding with their state court foreclosure on the property.

By virtue of 11 U.S.C. § 541, the filing of a bankruptcy petition creates a bankruptcy estate. Section 541(a) of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "This definition is unquestionably broad, its main purpose being to bring anything of value that the debtors have into the [bankruptcy] estate." *Lyon v. Eiseman* (*In re Forbes*), 372 B.R. 321 (B.A.P. 6th Cir. 2007) (internal quotation marks and citation omitted). Although its scope is far-reaching, § 541(a) does not work to expand the debtor's interest in the property. "Whatever rights a debtor had at the commencement of the case continue into bankruptcy-no more, no less." *French v. Johnson* (*In re Coomer*), 375 B.R. 800, 804 (Bankr. N.D. Ohio 2007) (citing *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984)). The only interests that are excluded from property of the estate are found in 11 U.S.C. § 541(b), none of which are applicable in this case. "While federal law defines what types of property comprise the estate, state law generally determines what interest, if any, a debtor has in property." *O'Dowd v. Trueger* (*In re O'Dowd*) 233 F.3d 197, 202 (3d Cir. 2000); *Butner v. United* States, 440 U.S. 48, 99 S. Ct. 914 (1979).

Section 2703.26 of the Ohio Revised Code  is titled "Lis pendens in general" and at the time of commencement of this case,[7] provided that:

---

[7]Ohio Rev. Code § 2703.26 was amended effective September 11, 2008, to replace "summons has been served or publication made" with "complaint is filed."  The effect of this amendment was to broaden the scope of the *lis pendens* doctrine so that the filing of a complaint by itself "creates a 'pending' action for purposes of the doctrine . . . ." *Beneficial Ohio, Inc. v. Ellis*, 902 N.E.2d 452, 456 (Ohio 2009).

> When summons has been served or publication made, the action is pending so as to charge third person with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, *as against the plaintiff's title.*

Ohio Rev. Code § 2703.26 (2007) (emphasis added). As the Ohio Court of Appeals recognized in *Cincinnati ex rel. Ritter v. Cincinnati Reds, L.L.C.*, 782 N.E.2d 1225 (Ohio Ct. App. 2002):

> Lis pendens is a legal doctrine—literally "a pending lawsuit." It means that the filing of a lawsuit concerning specific property gives notice to others of the claim alleged in the lawsuit and that a purchaser of the property *may take the property* subject to the outcome of the lawsuit.
>
> Lis pendens is not a substantive right. It does not create a lien, but "charges the purchaser with notice of the pending action." If applicable, it *does not prevent* persons from transacting an interest in the property subject to litigation. Any conveyed interest, however, becomes subject to the outcome of the pending litigation. The purpose of lis pendens is to protect the plaintiff's interest in the subject property. Under the doctrine, "no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title."

*Id.* at 1235 (emphasis added) (footnotes and citations omitted). Although the doctrine prevents a subsequent purchaser from challenging a court's ultimate judgment in litigation pending at the time of acquisition of the property, it does not prevent the transfer of title during the pending lawsuit. *Id*.; *Bates v. Postulate Investments, LLC,* 892 N.E.2d 937, 940 (Ohio 2008) ("The doctrine places any such conveyed interest at risk and notifies the parties that they are bound by the decree and sale thereunder." (internal quotation marks and citations omitted)); *ABN AMRO Mortg. Group, Inc. v. Jackson*, 824 N.E.2d 600, 605 (Ohio Ct. App. 2005); *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 656 (B.A.P. 6th Cir. 2001) ("Thus, any prospective purchaser or encumbrancer 'is chargeable with constructive notice of the pendency of such suit, so as to render his interest in the subject of it liable to its event.' " (citing *Ludlow v. Kidd's Executors*, 3 Ohio 541, 542 (Ohio 1828))); *In re Seymour*, 442 B.R. 652, 656 (Bankr. S.D. Ohio 2010). The intended purpose of the *lis pendens* doctrine is to "preserve[] the status quo of all conflicting rights and interests in the property in question until there is a final adjudication of the issues raised in the pending suit." *Cook v. Mozer*, 140 N.E. 590, 592 (Ohio 1923). Focusing on the interplay of the *lis pendens* doctrine and foreclosure actions specifically, the doctrine does not prevent the transfer of an interest in the underlying property during the pendency of the foreclosure action. *Wheeling Corp. v. Columbus & Ohio River R.R. Co.*, 771 N.E.2d 263, 280 (Ohio Ct. App. 2001). However, as with

all pending actions, the doctrine of *lis pendens* places the "conveyed interest at risk and subject to the final outcome of the litigation." *Id.* "In Ohio, a foreclosure proceeding is considered pending through the final decree and until the interest in the property in question has been foreclosed and the property sold." *Seymour*, 442 B.R. at 657 (internal citation omitted). If a foreclosure action has been commenced pre-petition, but has not been completed at the time the bankruptcy petition is filed, the debtor's interest in the property becomes property of the estate. *Stubbins v. Slack* (*In re Slack*), 394 B.R. 164, 169 (Bankr. S.D. Ohio 2008); *see also Huntington Nat'l Bank v. A.K. Fiberglastics, Inc.* (*In re A.K. Fiberglastics, Inc.*), 26 B.R. 549 (Bankr. Ohio 1983) (holding that property on which a judgment of foreclosure had been entered pre-petition, but which had not been sold at the time the bankruptcy case was filed was property of the estate under § 541).

In addition to creating an estate, the filing of a bankruptcy petition triggers the protections of the automatic stay under 11 U.S.C. § 362(a). Section 362(a) prohibits creditors from attempting to collect most debts from the debtor or property of the estate. The scope of the automatic stay is broad and "[i]t stops all collection efforts, all harassment, and all foreclosure actions." H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978); *Smith v. First Am. Bank* (*In re Smith*), 876 F.2d 524, 526 (6th Cir. 1989). "It is elementary that the automatic stay comes into existence automatically and immediately upon the filing of a petition in bankruptcy." *Webb Mtn, LLC, v. Exec. Realty P'ship, L.P.* (*In re Webb Mtn., LLC*), 414 B.R. 308, 335 (Bankr. E.D. Tenn. 2009) (internal quotation marks and citations omitted). The stay of an act against property of the estate continues until the property is no longer property of the estate. 11 U.S.C. § 362(c)(1). The stay of any other act continues until the case is closed, dismissed, or discharged, whichever is earliest. 11 U.S.C. § 362(c). The commencement or continuation of foreclosure proceedings or enforcement of a foreclosure judgment is specifically prohibited by § 362(a). *Hardesty v. Chase* (*In re Hardesty*), 442 B.R. 110, 113 (Bankr. N.D. Ohio 2010); *A.K. Fiberglastics, Inc.*, 26 B.R. at 551. The only exceptions to the automatic stay are found in § 362(b), none of which are applicable in the case presently before the Panel. A creditor seeking to proceed with an action prohibited by the automatic stay must seek relief from the stay pursuant to § 362(d).

In making their argument that the Debtor's interest in the Barkston Property did not become property of the bankruptcy estate, the Appellants seem to confuse the issues of property of the estate

under § 541(a) and the automatic stay under § 362 with the issues of lien avoidance under § 522(f) and a trustee's avoidance powers under § 544. In their bankruptcy court pleadings, the Appellants cited the decision *In re Ochmanek*, 266 B.R. 114 (Bankr. N.D. Ohio 2000) as support for their argument that the Barkston Property was not property of the Debtor's estate. The *Ochmanek* decision contains no such holding. At issue in *Ochmanek* was whether the debtors could avoid a judgment lien under § 522(f) which allegedly impaired their homestead exemption. In defense of the § 522(f) action, the judgment lien creditor asserted that the doctrine of *lis pendens* prevented the subsequent recordation of a mortgage from operating against him such that there was sufficient equity to defeat the debtors' motion. *Id*. at 121.

The *Ochmanek* court thoroughly analyzed the doctrine of *lis pendens* in Ohio and concluded that the mortgage company's interest in the debtor's property was subject to the foreclosure action. *Id*. at 122. Consequently, the judgment lien was found to be the superior lien and the court concluded it could not be avoided by the debtor. There is nothing in the opinion which even remotely stands for the proposition that property which is the subject of a pre-petition state court foreclosure action does not become property of the estate. Nor does the opinion contain any discussion at all of the automatic stay, let alone hold that the doctrine of *lis pendens* somehow extinguishes the protections afforded by § 362. The case simply does not offer any support whatsoever for the Appellants' position.

In their brief in this appeal, the Appellants cite the BAP decision of *Treinish v. Norwest Bank, Minn., N.A.* (*In re Periandri*), 266 B.R. 651 (B.A.P. 6th Cir. 2001), and state that under this decision "the Debtor would not have the status of a bona fide purchaser." App. Brief p. 17. At issue in *Periandri* was whether the chapter 7 trustee could avoid an allegedly defective mortgage on which a foreclosure action had been commenced pre-petition. The mortgage company asserted that, by virtue of the doctrine of *lis pendens*, the foreclosure action provided the trustee constructive notice of the lien such that he could not obtain the status of a hypothetical bona fide purchaser under § 544(a)(3). The bankruptcy court agreed with the bank and concluded that the trustee could not use his strong-arm powers to avoid the bank's interest. On appeal, the BAP affirmed.

The *Periandri* case does not avail the Appellants, and the Appellants' premise, that pursuant to *Periandri* the Debtor lacks bona fide purchaser status, misses the mark. The instant case does not involve avoidance of a lien by a trustee or the Debtor pursuant to § 544; the instant dispute involves the *scope* of the bankruptcy estate and the automatic stay. Whether a debtor could attain the status of a hypothetical bona fide purchaser under § 544 has no impact on the question of whether the *lis pendens* doctrine prevents property from being "property of the estate" under § 541.

In fact, the *Periandri* panel recognized two key points which defeat the Appellants' arguments in the instant case. First, the BAP emphasized the principle that the doctrine of *lis pendens* does not prevent a third party from acquiring an interest in property that is the subject of a pending foreclosure action:

> A more modern reiteration of the [*lis pendens*] principle holds that if a third party acquires an interest in the property while the action is pending, that person takes the property subject to the final outcome of the action, thus protecting the plaintiff's interest in the property at issue.

*Id.* at 656-57 (internal citations and quotation marks omitted). Second, the panel specifically found that the property at issue was property of the estate and that the "the bankruptcy filing triggered an automatic stay of the pending judicial foreclosure . . . [that continued until] that property was no longer property of the bankruptcy estate." *Id.* at 657 (citing 11 U.S.C. § 362(c)(1)). Quite simply, this decision makes clear (1) that a third party may acquire an interest in property that is the subject of a pending action and (2) that the doctrine of *lis pendens* does not except the subject property from property of the estate under § 541(a) nor does it void the application of the automatic stay to the Debtors interest in the property. Until such time as the stay is terminated or modified, any pending foreclosure action may not proceed.

In the case presently before the Panel, it is clear that the Debtor acquired an interest in the Barkston Property when his mother conveyed it to him on August 9, 2006. The only effect that the *lis pendens* doctrine had on his interest was to make his interest subject to, and bound by, the outcome of the Polsters' state court foreclosure action. *Bates*, 892 N.E.2d at 940. As long as the state court foreclosure proceeding was pending, Beverly Webb was free to transfer her interest in the property to the Debtor. Once the Barkston Property was transferred to the Debtor, he acquired an

-15-

interest in it which became property of his bankruptcy estate pursuant to 11 U.S.C. § 541(a). The only limitation on his interest was that it was subject to the outcome in the foreclosure action. Because a foreclosure sale had not been completed at the time the case was filed, the Debtor's interest in the property became property of his estate under § 541(a) and the continuation of the foreclosure action was prohibited by the automatic stay. The ruling of the bankruptcy court on this issue clearly did not constitute an abuse of its discretion.

Although there do not appear to be any cases directly on point, a review of decisions that discuss other *lis pendens* issues reinforces the conclusion that the bankruptcy court did not err in its determination that the Barkston Property was property of the estate which was protected by the automatic stay. In *Savers Fed. Sav. & Loan Assoc. v. McCarthy Constr. Co.* (*In re Knightsbridge Dev. Co.*)*, Inc.*, 884 F.2d 145 (4th Cir. 1989), the Fourth Circuit Court of Appeals applied Virginia law and concluded that a post-petition amendment to a *lis pendens* filed pre-petition did not violate the automatic stay because it did not interfere with the debtor's possession of or control over property of the estate nor was it an exercise of control over property of the estate. *Id.* at 147. In *Byrd v. Hoffman*, 417 B.R. 320 (D. Md. 2008), the district court concluded that *lis pendens* notices resulting from state court proceedings commenced post-petition violated the automatic stay because the underlying proceeding sought to exert control over property of the estate. *Id.* at 329. In *Thornburg v. Lynch* (*In re Thornburg*), 277 B.R. 719 (Bankr. E.D. Tex. 2002), the bankruptcy court concluded that the automatic stay precluded the post-petition filing of a notice of *lis pendens*. *Id.* at 730. Although the precise question in the current appeal was not at issue in these cases, inherent in each decision was the conclusion that the debtor's interest in the underlying property was property of the estate and was protected by the automatic stay.

**B.      The Appellants' Willful Violation of the Automatic Stay under 11 U.S.C. § 362(k)**

Continuation of foreclosure proceedings is specifically prohibited by § 362(a). *Hardesty,* 442 B.R. at 113. In instances in which a foreclosure sale has been put in motion pre-petition, creditors have an affirmative duty to stop the sale from continuing once they receive actual notice of a debtor's bankruptcy filing. *Id.* at 114; *Ledford v. Tiedge* (*In re Sams*), 106 B.R. 485, 490 (Bankr. S.D. Ohio 1989). "The stay requires the creditor to maintain, or restore, the status quo as

it existed at the time of the filing of the bankruptcy petition." *In re Johnson*, 262 B.R. 831, 847 (Bankr. D. Idaho 2001) (internal quotation marks and citation omitted). Thus,

> [It is] incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition.

*In re Banks* 253 B.R. 25, 30 (Bankr. E.D. Mich. 2000) (citing *Sams*, 106 at 490); *In re Johnston*, 321 B.R. 262, 284 (Bankr. D. Ariz. 2005) ("The creditor sets in motion the process. The creditor is very much in the driver's seat and very much controls what is done thereafter if he chooses. If the continuation [of a pending collection action] is to be stayed, [the creditor] cannot choose to do nothing and pass the buck to the debtor." (citation omitted))). At most, this duty requires a creditor to dismiss a pending foreclosure action. *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999). At the very least, it requires the creditor to inform the state court of the pending bankruptcy filing and to cause any scheduled sale to be postponed until such time as the automatic stay is modified or terminated by the bankruptcy court or by operation of law. *In re Crawford*, 388 B.R. 506, 523 (Bankr. S.D.N.Y. 2008).

Actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.,* 990 F.2d 905, 911 (6th Cir. 1993). These limited circumstances arise "only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result . . . ." *Id.* at 911.

Section 362(k)(1) provides that "an individual injured by any *willful* violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added). "A violation is willful if the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case." *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001) (internal citations and quotation marks omitted).

> A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.
>
> Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

*In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997).

It is irrelevant to a court faced with imposing § 362(k) sanctions whether a defendant actually intended to violate the automatic stay. If the defendant had knowledge of the bankruptcy case and took a deliberate act in violation of the automatic stay, a bankruptcy court must award the plaintiff actual damages, including costs and attorney's fees. *In re Hill*, 222 B.R. 119, 123 (Bankr. N.D. Ohio 1998). "[A] willful violation of the stay can be found from an act of omission and does not require an act of commission." *Banks*, 253 B.R. at 31. Therefore, if a creditor has an affirmative duty to halt a pending state court action, failure to do so can result in a willful violation of the stay. *Id.*

A creditor's good faith belief that its intentional actions did not violate the automatic stay is not a defense to a § 362(k) action. *Transouth Fin'l Corp. v. Sharon* (*In re Sharon*), 234 B.R. 676, 688 (B.A.P. 6th Cir. 1999). This is true even if the creditor's belief is based on "a mistake of law or legal dispute regarding its rights." *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000); *Fleet Mortg. Group, Inc.*, 196 F.3d at 268-69 ("A good faith belief in a right to the property is not relevant to a determination of whether the violation was willful."); *Sansone v. Walsworth* (*In re Sansone*), 99 B.R. 981, 987 (Bankr. C.D. Cal. 1989) ("Not even a 'good faith' mistake of law or a 'legitimate dispute' as to legal rights relieve a willful violator of the consequences of the act [under § 362(k)]."). A party who has violated the automatic stay "cannot defend against liability for a stay violation by claiming a lack of continuing harm. That is, a compensable stay violation will exist once a resulting injury from the stay violation occurs. . . ." *In re Russell*, 448 B.R. 212, 216 (Bankr. N.D. Ohio 2011).

An individual seeking damages under § 362(k) must prove, by a preponderance of the evidence, that the actions taken were in violation of the stay, the violation was willful and the

violation caused actual damages. *Grine v. Chambers* (*In re Grine*), 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010). Attorney's fees "are a component of the actual damages recoverable under the language of § 362(k)(1)." *Cousins v. CitiFinancial Mortg. Co.* (*In re Cousins*), 404 B.R. 281, 290 (Bankr. S.D. Ohio 2009).

> [T]he attorney's fees and costs claimed as damages [pursuant to § 362(k)], whether pre-litigation or post-litigation, must have been proximately caused by and reasonably incurred as a result of the violation of the automatic stay. An award of fees, like an award of other actual damages under § 362(k), must be proven with reasonable certainty and may not be speculative.

*Grine*, 439 B.R. at 471 (citing *Archer v. Macomb Cty. Bank* (*In re Archer*)*, 853 F.2d 497, 499–500 (6th Cir. 1988)). The amount of attorney's fees a party seeks to recover under § 362(k) must be reasonable. *In re Russell*, 441 B.R. 859, 863 (Bankr. N.D. Ohio 2010). In awarding attorney's fees under § 362(k)(1), a court should determine whether the fees are reasonable based on the "customary compensation charged by comparably skilled practitioners" and whether the fees "bear a reasonable relationship to the amount in controversy." *Id.*; *Grine*, 439 B.R. at 472 (courts generally apply the "lodestar" method when determining the reasonableness of attorney's fees.)

> If litigation is unnecessary to afford a complete remedy to a debtor, then the fees for commencing and prosecuting an action will fail this standard. On the other hand, if litigation is necessary to afford a complete remedy to a debtor under the particular circumstances of the case, there is nothing in the plain language of § 362(k) that precludes a judgment for the attorneys' fees and costs incurred in prosecuting it.

*Grine*, 439 B.R. at 471. "A debtor is also under a duty to mitigate their damages." *Id.*

Turning to the case presently before the Panel, it is important to note that the action found by the bankruptcy court to violate the automatic stay was the Appellants' continuation of the state-court foreclosure proceeding after receiving notice of Debtor's chapter 13 filing. It was not the Appellants' failure to cancel the Sheriff's sale after the Contempt Hearing held July 19, 2007. For, as is sufficiently clear from the record, the bankruptcy court enjoined that sale on July 20, 2007 in the Contempt Order. As a result, it is necessary to focus on whether the bankruptcy court abused its discretion in finding that the Appellants willfully violated the automatic stay when they continued with the foreclosure action in state court prior to the contempt hearing in bankruptcy court.

The Appellants do not dispute that they received timely notice of the Debtor's bankruptcy filing. They were sent notice of the § 341 meeting of creditors by first class mail on June 10, 2007, and a copy of the Debtor's plan on July 5, 2007. The Debtor's schedules included the Barkston Property and the Polsters' lien, and the plan provided treatment of the Polsters' judgment lien encumbering the property. The Appellants also do not dispute that they received the letter from the Debtor's attorney on June 22, 2007, informing them that moving to reset the Sheriff's sale violated the automatic stay. Despite all this knowledge, however, the Appellants persisted in moving forward with the Sheriff's sale of the Barkston Property. As discussed above, the Appellants had an affirmative duty to stop the pending foreclosure action once they received actual notice of Debtor's chapter 13 filing. Clearly, they failed to do so. Their mistake of law about the effect the doctrine of *lis pendens* on the property is no defense to the § 362(k) action.

Moreover, their argument that the bankruptcy court did not allow them the chance to cancel the Sheriff's sale on their own has no impact on the issue. The action which the bankruptcy court determined violated the automatic stay was the Appellants' actions to reschedule the foreclosure sale despite knowledge of the bankruptcy case, and failure to take affirmative steps to stop the foreclosure action prior to the Contempt Hearing. Whether the Appellants cancelled the sale after the Contempt Hearing was irrelevant. "[A] compensable stay violation will exist once a resulting injury from the stay violation occurs. . . ." *Russell*, 448 B.R. at 216. Consequently, any offer by the Appellants at the bankruptcy court hearing to cancel the Sheriff's sale would have had no effect on the fact that the violation of the automatic stay had already occurred and damages incurred. All of the facts in this appeal clearly demonstrate that the bankruptcy court did not abuse its discretion when it determined that the Appellants willfully violated the automatic stay and held them in contempt.

Once a court determines that a party has willfully violated the automatic stay, the court is required by § 362(k)(1) to impose sanctions in an amount equal to the Debtor's actual damages. When attorney's fees are requested as part of an actual damages award, a court must determine whether the fees are reasonable and whether they were proximately caused by the violation of the stay. Debtors are also under a duty to mitigate their damages; claims for fees incurred in the prosecution of an unnecessary motion are not recoverable. *See Grine*, 439 B.R. at 471 ("If litigation

is unnecessary to afford a complete remedy to a debtor, then the fees for commencing and prosecuting an action will fail . . . .").

In this case, the Appellants continued to move forward with the foreclosure action despite having knowledge of the Debtor's chapter 13 filing and despite receiving the warning letter. Consequently, the Debtor had no choice but to file his Contempt Motion with the bankruptcy court on July 17, 2007, and to appear in court at the Contempt Hearing, to litigate the matter. In the Appellants' response to the Contempt Motion, they did not allege they would cancel the Sheriff's sale or that they would cease any further attempts at conducting a Sheriff's sale. Instead, they claimed that the Barkston Property was not property of the estate under the doctrine of *lis pendens* and that the automatic stay did not apply to block their foreclosure efforts. The Appellants continued this argument at the Contempt Hearing. At no time during the pendency of this case did the Appellants seek a determination from the bankruptcy court that the Barkston property was not property of the estate. Further, the Appellants failed to seek relief from the automatic stay to continue with the state court foreclosure action.

A review of the bankruptcy court's Contempt Order makes clear that the court rejected the Appellants' argument regarding the doctrine of *lis pendens*. That order explicitly states that the Barkston Property was property of the estate pursuant to § 541(a) and that the provisions of the § 362(a) automatic stay apply to the property. Despite the bankruptcy court's rejection of this argument, the Appellants continued to maintain that the Barkston Property was not property of the estate for the next 3 ½ years. This persistence required the Debtor and his attorney to spend a substantial amount of time defending the Appellants' allegations with regard to the property; however, the only period of time which the Debtor included in his request for attorney's fees was June 20 through August 16, 2007. The first entry was for preparation of the June 22, 2007 letter to Eisenberg informing him that the Appellants' actions violated the automatic stay. The next 6 entries, which comprise slightly over 12 hours, were for the preparation of the Contempt Motion, review of the Appellants' response thereto, and research and preparation for the Contempt Hearing on the Contempt Motion. The next three entries totaling 1.2 hours, were for review and discussion of the Contempt Order with the Debtor. The last six entries totaling 4.1 hours, were for the review of the Appellants' motion for reconsideration, preparation of the Debtor's response thereto and preparation

for the hearing. No requests were made for any other time spent on the case after the hearing on the motion to reconsider even though the Debtor was embroiled in litigation on the contempt issue for the next three years. The Debtor did not request any fees for time spent on the Sanctions Motion even though resolution of that issue related directly back to the Contempt Motion and Order.

It is also important to note that although the Debtor first included a copy of the statement from his attorney showing the $4405.23 in fees and expenses he was seeking to recover with his response to the court's Show Cause Order, the Appellants never objected to the amount of these fees. They also failed to object to the certification filed by the Debtor's attorney on January 7, 2011, which included an exact duplicate of the billing statement showing the hours and rates used in calculating the requested fees.

In its Sanctions Order, the bankruptcy court concluded that it had reviewed the certification of fees submitted by the Debtor's counsel and found them to be "sufficient proof of the Debtor's damages . . . ." Keeping in mind the requirements for an award of attorneys' fees under § 362(k), a review of the entire record in this case indicates that the bankruptcy court did not abuse its discretion in sanctioning the Appellants $4405.23. This amount was equal to the Debtor's attorneys' fees incurred from June 20 through August 16, 2007. The Debtor's attorney had no choice but to file the Contempt Motion to stop the Sheriff's sale. Defending the Appellants' motion for reconsideration was a necessary element of the prosecution of the Debtor's Contempt Motion. In fact, a strong argument could be made that the work performed since the bankruptcy court issued its order denying the Appellants' motion for reconsideration would also be recoverable as sanctions under § 362(k)(1) because it is strongly related to the original Contempt Motion; however, the Debtor did not seek any of those fees, so they are not at issue in this appeal.

C.     **Refusal and/or Failure to Conduct an Evidentiary Hearing**

The Appellants allege that the bankruptcy court's refusal and/or failure to conduct an evidentiary hearing on the alleged violation of the automatic stay and the extent of the sanctions denied them due process. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333,

96 S. Ct. 893, 902 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191 (1965)). It is well established in the Sixth Circuit that a court is not always required to conduct a full evidentiary hearing when imposing sanctions. *Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011); *Silverman v. Mut. Trust Life Ins. Co. (In re Big Rapids Mall Assocs.)*, 98 F.3d 926, 929 (6th Cir. 1996).

> In this circuit, there is no requirement that a full evidentiary hearing be held before imposing sanctions. What is required is that an attorney receive fair notice and an *opportunity* for a hearing on the record.

*Metz*, 655 F.3d at 491 (emphasis in original) (internal quotation marks and citations omitted); *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008). "An order to show cause, along with the opportunity to respond to said order, can be sufficient, in certain circumstances, to provide the necessary procedural safeguards." *Cook v. Am. S.S. Co.*, 134 F.3d 771, 774 (6th Cir. 1998). If a court has full knowledge of the facts and the facts are undisputed, an evidentiary hearing on sanctions is unnecessary. *Big Rapids Mall*, 98 F.3d at 979; *Walker v. Cadle Co., Inc. (In re Walker)*, 168 B.R. 114, 122 (E.D. La. 1994). The right to an evidentiary hearing prior to the imposition of sanctions "is limited to cases where a hearing would assist the court in its decision." *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1418 (5th Cir. 1994). The determination of whether an evidentiary hearing would assist in the imposition of sanctions is within a court's discretion. *Wilson-Simmons v. Lake Cty. Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000); *Cook*, 134 F.3d at 774.

In the case presently before the Panel, the facts have been undisputed at all times. The Appellants admitted having notice of the Debtor's bankruptcy filing when they proceeded with the state court foreclosure action. As is evidenced by their responsive pleadings, it is also clear that the Appellants had notice of the hearings on the Debtor's Contempt Motion, the bankruptcy court's Show Cause Order, and the Debtor's Sanctions Motion. The attorney for the Appellants appeared at all of the relevant hearings. The Appellants also do not dispute having received notice of the Debtor's response to their motion for reconsideration or the Debtor's certification of attorney's fees. Both of these documents included a copy of the detailed billing statement showing the $4405.23 in fees the Debtor was requesting. The Appellants never objected to this amount either in writing or

at one of the hearings in the matter, or argued that the services reflected in the billing statement were unnecessary.

In its Sanctions Order, the bankruptcy court stated that it had reviewed the certification of fees submitted by the Debtor's counsel and found that to be "sufficient proof of the Debtor's damages, and, accordingly, an evidentiary hearing is unnecessary." This determination that an evidentiary hearing was unnecessary was well within the bankruptcy court's discretion. The facts were undisputed, the Appellants had been provided with several opportunities to be heard, and the Appellants never objected to the amount of fees the Debtor was requesting as damages.

In their appellate brief, the Appellants do not challenge the amount of the attorney's fees nor do they allege that the bankruptcy court abused its discretion in awarding that amount without an evidentiary hearing. Their sole complaint with regard to the lack of an evidentiary hearing was that, had they been given an opportunity to present evidence, the bankruptcy court would not have found them in contempt for violating § 362.[8] As discussed above, this argument is wholly without merit. They did not dispute having notice of the bankruptcy filing as of at least June 10, 2007. Yet, despite this knowledge, they failed to cease pursuing the state court foreclosure proceedings.

Pursuant to § 362(k), the facts in this case mandated the finding of liability under that section. When a creditor willfully violates the automatic stay, § 362(k) requires a court to impose sanctions. A creditor's mistaken belief as to the applicable law is no defense to a determination that they have willfully violated the stay. Hence, their allegation that the bankruptcy court's refusal to allow them an opportunity to present evidence would have somehow altered this decision is baseless. The bankruptcy court's decision as to the necessity of an evidentiary hearing on the issue of the willfulness was well within its discretion and its refusal to grant that request was not an abuse of that discretion.

---

[8]When questioned at oral argument in this appeal as to what evidence the Appellants would have presented at an evidentiary hearing, counsel for the Appellants was unable to present the Panel with an answer except to say that his clients felt like they were denied their "day in court."

## V.   CONCLUSION

For the foregoing reasons, the Panel affirms the bankruptcy court's order entered February 4, 2011, imposing sanctions against the Appellant.