**In re Frank DANIELS, Debtor.**

**Bankruptcy No. 95–53612–R.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

March 13, 1997.

Charles Schneider, Detroit, MI, for Debtor.

Charles Kleinbrook, Detroit, MI, for Creditor.

### OPINION REGARDING MOTION FOR RECONSIDERATION

STEVEN W. RHODES, Chief Judge.

This matter is before the Court on a motion for reconsideration filed by Detroit Municipal Credit Union. DMCU seeks reconsideration of an order holding it in contempt for violating the automatic stay of 11 U.S.C. § 362(a). It contends that its violation of the stay was inadvertent and that the Court erred in finding that the violation was willful. The Court concludes that the motion should be denied, but that the order should be amended for reasons not asserted by DMCU.

### I.

The debtor filed a bankruptcy petition under chapter 7 on December 13, 1995, and notice of the petition was immediately sent to DMCU. At that time, the debtor was repaying a loan through automatic payroll deductions from his pay from the City of Detroit. On December 26, 1996, Alvin Brooks, DMCU's bankruptcy file manager, made an entry on DMCU's records, stating, "Chapter 7 on 12/13/95 Did not cancel deductions Sent to Atty." According to Brooks, his decision not to cancel the deductions at that time was made pursuant to an explicit DMCU policy and practice not to cancel payroll deductions in chapter 7 cases.[1]

On January 3, 1996, the debtor converted the case to chapter 13, and the Court immediately sent out notice of this to DMCU. Brooks then made this entry on January 16, 1996, "7 conv to chapter 13 on 1/3/96 cancelled deductions sent to atty." This entry was made pursuant to a policy under which

---

1. Transcript of hearing, 9/26/96 at p. 21.

payroll deductions *are* terminated in chapter 13 cases.

On February 13, 1996, DMCU's attorney sent a letter to the debtor's attorney advising that it would make arrangements to stop the automatic payroll deductions, but that it might take two or three weeks for the City of Detroit to actually stop the deductions. On February 20, 1996, Brooks made this entry reflecting receipt of a copy of that letter, "Ltr from atty Klienbrook: Does mbr want to ~~cancel~~ reinstate deductions."

Nevertheless, the deductions continued. DMCU continued to apply the deductions to the debt, until the debtor's attorney filed and served the motion to hold DMCU in contempt. At that time, DMCU offered to refund all of the post-petition deductions, and asserted inadvertence in response to the motion.

The Court granted the motion, finding that DMCU's admitted violation of the automatic stay was willful. The Court ordered DMCU to refund all post-petition deductions, awarded costs of $250, and ordered DMCU to file an affidavit detailing a plan to institute a policy to prevent further violations of the automatic stay in bankruptcy cases. DMCU did eventually file the required affidavit.

## II.

*DMCU's motion for reconsideration is filed* pursuant to Rule 7.1(h) of the Local Rules of Procedure for the Eastern District of Michigan, which provides:

> (1) **Time.** Any motion to alter or amend a judgment and any motion for rehearing or reconsideration shall be served not later than 10 days after entry of such judgment or order.

> (2) **No Response and No Hearing Allowed.** No response to the motion and no oral argument thereon shall be allowed unless the Court, after filing of the motion, otherwise directs.

> (3) **Grounds.** Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be

granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

Local Rule 7.1(h) (E.D.Mich.1992).

## III.

The relief sought by the debtor in his initial motion is considered pursuant to 11 U.S.C. § 362(h), which provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

1 David G. Epstein, et al., *Bankruptcy*, § 3–33, at 363–65 (1992), well summarizes the applicable law as follows:

> Virtually everybody agrees that a violation is willful when a creditor acts intentionally with knowledge of the stay or, more generally, the bankruptcy. Actually, the courts do not disagree on the event about which the creditor must be aware because "knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." [*In re Wagner*, 74 B.R. 898, 904 (Bankr. E.D.Pa.1987).]

> A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, "[w]here there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional." [*Homer Nat'l Bank v. Namie (In re Namie)*, 96 B.R. 652, 654 (W.D.La.1989).]

> Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages. Specifically, liability is not conditioned on proving a request and refusal to quit the violation. Also, establishing civil contempt is not necessary. Imposing sanctions for contempt was the principal answer to willful violations of the stay before section 362(h) was

enacted. It remains an alternative or additional remedy in some circumstances, but section 362(h) is entirely independent and triggered solely by its own terms.

The reason the section 362(h) trigger is so quick and easy is simple:

This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations.

The same policy explains why good faith is not a defense and is irrelevant to liability. Specifically, " '[w]hether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful." ' " [*In re Atlantic Bus. & Commun. Corp.*, 901 F.2d 325, 329 (3d Cir.1990), quoting *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989).] " 'Not even a "good faith" mistake of law or a "legitimate dispute" as to legal rights relieve a willful violator of the consequences of the act,' " or even good faith reliance on an attorney's advice. [*In re Chateaugay Corp.*, 112 B.R. 526, 530 (S.D.N.Y.1990), *rev'd on other grounds*, 920 F.2d 183 (2d Cir.1990), quoting *In re Sansone*, 99 B.R. 981 (C.D.Cal. 1989).] [Footnotes omitted.]

Under this law, the Court reaffirms its finding that DMCU's violation of the automatic stay was willful. It knew of the bankruptcy at least as early as December 26, 1995[2] and continued to apply deductions from the debtor's wages to its debt until June 20, 1996. Those facts alone are sufficient to establish "willfulness" under the law.

But there is more. DMCU's own records, as well as Brooks' statements to the Court, establish that DMCU's policy was not to terminate wage deductions in chapter 7 cases. Its subsequent "inadvertence" in failing to terminate the deductions when the case converted to chapter 13 is thus irrelevant. It was apparently content to wait to terminate the deduction only upon specific request. This of course ignores that the stay of section 362 is automatic and does not require any such request.

### IV.

DMCU relies upon *Atkins v. Martinez* (*In re Atkins*), 176 B.R. 998 (Bankr.D.Minn.1994) and *In re Red Ash Coal & Coke Corp.*, 83 B.R. 399 (W.D.Va.1988). These cases are distinguishable and thus do not support DMCU's position.

In *Atkins*, the debtor sought damages under § 362(h) against an attorney who had failed to cancel a warrant for the arrest of the debtor. The court held that the stay violation was not willful because although the attorney was aware of the bankruptcy and of the stay, the violation was one of omission and not commission, and he simply had forgotten about the warrant. Similarly, in *Red Ash*, the court held that the respondent's violation was not willful because the respondent had "incorrectly thought that they had omitted" the debtor's name from a default judgment. *Red Ash*, 83 B.R. at 404. In neither case was there any deliberate act.

In the present case, however, the violation was a deliberate act—pursuant to policy, Brooks decided not to terminate the deduction when he received notice of the bankruptcy. Thus, neither *Atkins* nor *Red Ash* supports DMCU's position.

### V.

◼ The Court, however, concludes that the order should be modified on grounds not asserted by DMCU. As noted above in the quote from Epstein, "[E]stablishing civil contempt is not necessary. Imposing sanctions for contempt was the principal answer to willful violations of the stay before section 362(h) was enacted." Epstein, § 3–33 at 364 (footnotes omitted).

In this case, the debtor filed and the Court granted a motion for contempt. This was unnecessary and improper in light of

---

**2.** At the initial hearing, DMCU asserted it was not aware of the bankruptcy until the motion was served. Later it asserted that it was not aware of the bankruptcy until the chapter 13 plan was served. Both of these positions were subsequently abandoned, however, when its own records came to light.

§ 362(h). An individual should seek relief for a violation of the automatic stay pursuant to that section, and not as a contempt matter. The Court's consideration of the debtor's request for a finding of contempt was in error.

Accordingly, although the Court denies the motion for reconsideration, the Court will amend the contempt order by vacating the finding of contempt and by stating that the relief sought by the debtor is granted pursuant to 11 U.S.C. § 362(h).