**In re Denise M. BANKS, Debtor.**

**No. 00–44464–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Sept. 13, 2000.

William Orlow, Pleasant Ridge, MI, for debtor.

Louis P. Rochkind, Detroit, MI, for creditor.

Opinion

STEVEN W. RHODES, Bankruptcy Judge.

The debtor, Denise Banks, filed a motion for damages for violation of the automatic stay. In response, the creditor asserted that the stay violation was not willful. The Court conducted an evidentiary hearing to determine the issue.

Previously, the creditor had properly obtained an order granting relief from the stay. However, the creditor was unaware that under Bankruptcy Rule 4001(a)(3), as amended effective December 1, 1999, the order granting relief from the stay was itself stayed for ten days. As a result, the creditor caused a writ of restitution to be issued and executed during that ten day period. Then, making matters worse, even after the creditor was advised that the automatic stay remained in effect for ten days despite the order granting relief from the stay, the creditor failed to act to vacate the writ. In these circumstances, the Court finds that the creditor did willfully violate the automatic stay.

## I.

On August 13, 1999, Denise Banks' home was sold at a sheriff's sale following a mortgage default. On February 14, 2000, following the expiration of the period of redemption, MV Services, the purchaser at the foreclosure sale, filed suit in state court to obtain possession of the property. On February 25, 2000, MV Services quit claimed the property to Ralph Roberts Realty.[1] (Debtor's Ex. 1.) Ralph Roberts Realty then sold the property to a third party, conditioned upon Ralph Roberts Realty obtaining possession of the property.

On March 15, 2000, the state court entered a default judgment. On March 23, 2000, Banks filed her chapter 7 petition. On March 24, 2000, the state court entered an order for administrative closing due to the bankruptcy stay. (Debtor's Ex. 3.)

On April 18, 2000, MV Services filed a motion to lift the automatic stay as to the property.[2] On the morning of May 11, 2000, the Court granted the motion. That same day, Jay Kalish, the attorney who had filed and argued the motion, faxed a copy of the order terminating the automatic stay to the offices of Ralph Roberts Realty. (Debtor's Ex. 12.) Charles Ferarolis, the attorney handling the state court case for Ralph Roberts Realty, was at the office of Ralph Roberts Realty and was given the order lifting the automatic stay. A writ of restitution was prepared by someone at the office of Ralph Roberts Realty and signed by Charles Ferarolis. The order terminating the automatic stay and the writ of restitution were then faxed to the state court, which then entered the writ of restitution the same day. (Debtor's Ex. 5.)

On Friday, May 12, 2000, court officers attempted to execute the writ of restitution and evict Banks from the home. Banks called her attorney, William Orlow, who called Jay Kalish and informed him that, pursuant to Bankruptcy Rule 4001(a)(3), the order granting relief from the automatic stay was stayed for ten days. Kalish spoke by phone to one of the officers present at Banks' home and told him that the eviction should be stopped. The court officers left the home.

---

1. It was the stated practice of MV Services to provide funding to Ralph Roberts Realty for the purpose of purchasing realty at foreclosure sales. As security for the loan, the sheriff's deed listed MV Services as the grantee. If the property was not redeemed, Ralph Roberts Realty was obligated to repay the advance to MV services within 10 days following the expiration of the redemption period and the property would be transferred to Ralph Roberts Realty.

2. Although MV Services no longer owned the property, its attorney, Jay Kalish, testified that he filed the motion on behalf of MV Services, rather than Ralph Roberts Realty, because he was under the mistaken belief that he was representing MV Services in this action as the entities are related.

However, the officers returned later that day. Banks refused to let them in and they informed her that if she did not get the matter straightened out, they would be back on Monday. Banks testified that she informed Orlow that the officers had stated that they would be back on Monday. Orlow testified that he called Kalish's office Friday afternoon and left a message for him regarding the threat by the officers to return on Monday. Kalish testified that he never received that message.

On Monday, May 15, at approximately 3:30 p.m., court officers returned to Banks' home to evict her. She refused to let them in and called her attorney. The officers forcibly entered the home, grabbed the phone out of her hand while she was talking to Orlow, and began removing her possessions. Orlow then called Kalish, who testified that he could not believe the eviction was proceeding because he thought he had taken care of the matter by phone the previous Friday. At approximately 4:15 p.m., Ralph Roberts came to Banks' home and, after observing the proceedings for approximately 20 minutes while conferring on his mobile phone (with whom is unknown), instructed the officers to stop the eviction. By that time, much of Banks' property had been removed from the home and Banks had been arrested for assaulting an officer.

It is reasonably clear that the court officers returned on Monday to execute the writ simply because it was still in effect and no action had been taken by any party to vacate it.

## II.

The debtor argues that the respondent's conduct in obtaining the writ of restitution on May 11, 2000, and then not taking any action to vacate the writ after officers attempted to execute the writ in violation of Rule 4001(a)(3), constituted a willful violation of the automatic stay. Therefore, the debtor contends that even if the respondents did not know that the officers were going to return on May 15, 2000 to evict her, they are responsible for the continuing stay violation.

Ralph Roberts Realty contends that it did not willfully violate the automatic stay because on May 12, 2000, when the officers were attempting to evict Banks, Jay Kalish instructed the officers that the stay termination order was not in effect for ten days and that they must leave immediately. Ralph Roberts Realty contends that it did not instruct the officers to return on May 15 and that it cannot be responsible for their independent, unauthorized acts. Ralph Roberts Realty further argues that if the debtor and her attorney knew that the officers intended to return on Monday, they should have taken some action to prevent that.

## III.

As an initial matter, the Court concludes that although the motion was filed against MV Services, Ralph Roberts Realty is the proper party. No one disputes that MV Services had no real connection to this property after it transferred the property to Ralph Roberts Realty. Further, as noted, the pleadings that were filed on behalf of MV Services by Jay Kalish were done so based on his mistaken belief that he represented MV Services instead of Ralph Roberts Realty. In any event, no evidence was introduced to show a violation of the automatic stay by MV Services and Ralph Roberts Realty agrees that it is the proper party.

## IV.

FED.R.BANKR.P. 4001(a)(3), as amended December 31, 1999, provides:

(3) Stay of Order.

An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise.

 This section was added to give debtors an opportunity to request a stay

pending appeal of an order lifting the automatic stay before the order is enforced or implemented. *See* FED.R.BANKR.P. 4001(a) advisory committee's notes. "While the enforcement and implementation of an order granting relief from the automatic stay is temporarily stayed under paragraph (a)(3), the automatic stay continues to protect the debtor and the moving party may not foreclose on collateral or take any other steps that would violate the automatic stay." *Id.* The order terminating the automatic stay was entered by the Court on May 11, 2000. It is undisputed that the automatic stay was still in effect on the dates involved here—May 11, 12 and 15, 2000.

The automatic stay prohibits all proceedings against a debtor following the filing of a bankruptcy petition. Legislative history reflects Congress' intent to provide broad protection to debtors:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978); reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296–97.

Section 362(h) provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

▆ A party acts willfully by taking any action prohibited by § 362(a) after the party receives notice of the bankruptcy filing. *In re Briggs*, 143 B.R. 438, 462 (Bankr. E.D.Mich.1992). An intent to violate the stay is not necessary. *Expeditors Int'l of Wash., Inc. v. Colortran, Inc. (In re Colortran, Inc.)*, 210 B.R. 823, 826 (9th Cir. BAP 1997) *aff'd in part, vacated in part,* 165 F.3d 35, 1998 WL 792307 (9th Cir. 1998) (unpublished table decision).

> "Willful" is a word "of many meanings, its construction often influenced by its context." There is no legislative history on what Congress intended "willful" to mean in the context of § 362(h). The courts have generally interpreted it to require "intentional or deliberate" conduct.

*In re Shealy*, 90 B.R. 176, 179 (Bankr. W.D.N.C.1988) (citing *Tel–A–Communications Consultants, Inc. v. Auto–Use (In re Tel–A–Communications Consultants, Inc.)*, 50 B.R. 250, 254 (Bankr.D.Conn. 1985) (additional citations omitted)).

▆ A creditor's good faith belief that it had a right to the property is not relevant to whether the act was willful or whether damages should be imposed. *Id.* *See also Cuffee v. Atlantic Bus. & Community Dev. Corp. (In re Atlantic Bus. & Community Dev. Corp.)*, 901 F.2d 325, 327 (3d Cir.1990) (A good faith belief that the act does not violate stay is not relevant to the determination of willfulness.). Further, whether the creditor understands that the automatic stay is in effect is equally irrelevant. In *Isom v. Yoon (In re Isom)*, 1998 WL 173204 (Bankr.D.Minn. April 8, 1998), in response to the creditor's argument that although he knew the debtor had filed bankruptcy, he did not know about the automatic stay, the court stated:

> [I]gnorance of the law is no excuse. For conduct to be considered "willful" under § 362(h), a deliberate act made with knowledge of the filing of the bankruptcy petition is all that is required; a proper understanding of the Bankruptcy Code or a specific intent to violate the automatic stay is not. A different rule would be unworkable, rendering

§ 362(h) unenforceable against virtually all except bankruptcy attorneys.

*Id.* at *3 (citation omitted).

## V.

■ Ralph Roberts Realty does not dispute that it violated the automatic stay by causing the issuance of the writ of restitution. The issue is whether failure of Ralph Roberts Realty to take affirmative steps to vacate the writ constitutes a willful violation of the stay. Ralph Roberts Realty argues that because it instructed the officers on May 12 to discontinue the eviction, it should not be responsible for the officers' independent decision to proceed with the eviction on May 15.

Under similar circumstances in cases involving garnishments, courts widely agree that a creditor has an affirmative duty to dismiss a prepetition garnishment upon learning of the bankruptcy filing. *See In re Manuel,* 212 B.R. 517, 519 (Bankr. E.D.Va.1997) (The creditor, "having an affirmative obligation not to continue a violation of the automatic stay, acted willfully when he failed to promptly dismiss the garnishment against debtor's wages."). *See also Baum v. United Va. Bank (In re Baum),* 15 B.R. 538 (Bankr.E.D.Va.1981) (A creditor has a "responsibility to stop the downhill snowballing of a continuing garnishment.").

In *Elder v. City of Thomasville, Ga. (In re Elder),* 12 B.R. 491 (Bankr.M.D.Ga. 1981), the court stated:

Part of what is stayed in 11 U.S.C. § 362 is "continuation." Garnishment involves a creditor, a garnishee, and a court. Creditor sets in motion the process. Creditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the "continuation" is to be stayed, it cannot choose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay. Positive action on the part of the credi-

tor is necessary so that "continuation" may be stayed.

*Id.* at 494.

The Court concludes that Ralph Roberts Realty should have taken positive action to vacate the writ of restitution in order to effectuate the automatic stay of the "continuation" of the eviction process. Merely instructing the officers to discontinue the eviction was obviously not sufficient in light of the fact that they were in possession of the writ of restitution that had not been vacated. Ralph Roberts Realty attempts to shift the blame to both the debtor, for not taking affirmative steps herself to assure that the eviction did not continue, and the court officers, for returning on May 15 to execute the still effective writ. However, it was Ralph Roberts Realty that set in motion the eviction process by obtaining the writ of restitution in violation of the automatic stay, and therefore it was the responsibility of Ralph Roberts Realty to act to assure that the violation did not continue by taking the necessary steps to have the writ vacated.

Based on [the] language of § 362(a)(1), many courts have emphasized the obligation incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of an automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition.

This responsibility is placed on the creditor and not the debtor ... because "[t]o place the onus on the debtor .... to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory."

*Ledford v. Tiedge (In re Sams)*, 106 B.R. 485, 490 (Bankr.S.D.Ohio 1989) (citations omitted). *See also Mitchell v. Quality Plant Serv., Inc. (In re Mitchell)*, 66 B.R. 73, 75 (Bankr.S.D.Ohio 1986) ("If one is enjoined from continuing a judicial proceeding against the debtor, one is obliged to discontinue it.").

■ Ralph Roberts Realty cites this Court's decision in *In re Daniels*, 206 B.R. 444 (Bankr.E.D.Mich.1997), for the proposition that "a willful violation of the stay requires a deliberate act of commission, and not merely an omission." (Resp.Br. at 3.) However, *Daniels* does not stand for that proposition at all. In that case, at the time the debtor filed his chapter 7 petition, he was repaying a loan to the Detroit Municipal Credit Union through automatic payroll deductions. Pursuant to its policy, DMCU did not cancel the payroll deduction when it received notice of the bankruptcy. After the debtor converted his case to chapter 13, DMCU indicated to the debtor that it would make arrangements to cancel the payroll deductions, as was its policy in chapter 13 cases. However, the payroll deductions continued until the debtor's attorney filed a motion to hold DMCU in contempt for violation of the automatic stay. On a motion for reconsideration after the Court found DMCU in contempt, DMCU argued that its stay violation was inadvertent, not willful. DMCU relied on *Atkins v. Martinez (In re Atkins)*, 176 B.R. 998 (Bankr.D.Minn.1994) and *Foreston Coal Int'l, Inc. v. Red Ash Coal & Coke Corp. (In re Red Ash Coal & Coke Corp.)*, 83 B.R. 399 (W.D.Va.1988). However, the Court found those cases distinguishable, stating:

> In *Atkins*, the debtor sought damages under § 362(h) against an attorney who had failed to cancel a warrant for the arrest of the debtor. The court held that the stay violation was not willful because although the attorney was aware of the bankruptcy and the stay, the violation was one of omission and not commission, and he simply had forgotten

about the warrant. Similarly, in *Red Ash*, the court held that the respondent's violation was not willful because the respondent had "incorrectly thought that they had omitted" the debtor's name from a default judgment. *Red Ash*, 83 B.R. at 404. In neither case was there any deliberate act.

> In the present case, however, the violation was a deliberate act—pursuant to policy, [DMCU] decided not to terminate the deduction when [it] received notice of the bankruptcy.

*Daniels*, 206 B.R. at 446.

Thus, contrary to the argument of Ralph Roberts Realty, *Daniels* supports the conclusion that a willful violation of the stay can be found from an act of omission and does not require an act of commission.

Moreover, unlike the creditor in *Atkins*, Ralph Roberts Realty did not "forget" about the writ of restitution. And unlike the creditor in *Red Ash*, Ralph Roberts Realty did not inadvertently cause the writ to be entered. Rather, Ralph Roberts Realty deliberately caused the writ to be entered in violation of the stay and then, when advised that the writ violated the stay, took no action to vacate the writ in order to avoid the stay violation that would result from executing the writ.

Courts find a violation of the stay based on an act of omission when a creditor fails to cure a previous violation of the stay or otherwise restore the status quo. *See Connecticut Pizza, Inc. v. Bell Atlantic-Wash., D.C., Inc. (In re Connecticut Pizza, Inc.)*, 193 B.R. 217, 228 (Bankr.D.Md. 1996).

> A refusal or failure to take action may constitute an act within the scope of the automatic stay; thus, an entity which has violated the stay has an obligation to restore the status quo by undoing its previous action and preventing the continuation of the consequences of the stay violation. An entity's failure to comply with its duty to restore the status quo and undo its previous actions which vio-

lated the stay may constitute a willful violation of the stay.

*Commercial Credit Corp. v. Reed,* 154 B.R. 471, 476 (E.D.Tex.1993) (citation omitted). *See also Mitchell Const. Co. v. Smith (In re Smith),* 180 B.R. 311, 319 (Bankr. N.D.Ga.1995) ("Failure to take affirmative action to undo an innocent violation of the automatic stay . . . may constitute a willful violation.").

Accordingly, the Court concludes that Ralph Roberts Realty willfully violated the automatic stay by obtaining the writ of restitution and by failing to act as necessary to vacate the writ.

This is not a final order because further proceedings are necessary to determine the debtor's damages. The court will schedule a status conference to confer with counsel on that matter.