**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MARK E. STUART,<br><br>               Debtor. | BAP No. AZ-21-1063-FLS<br><br>Bk. No. 2:19-bk-05481-BKM |
| MARK E. STUART,<br>            Appellant,<br>v.<br>CITY OF SCOTTSDALE; RUSSELL<br>BROWN, Chapter 13 Trustee; CITY OF<br>SCOTTSDALE ATTORNEY'S OFFICE,<br>           Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda K. Martin, Bankruptcy Judge, Presiding

APPEARANCES:
Chris D. Barski of Barski Law PLC argued for appellant Mark E. Stuart;
Vail C. Cloar of Dickinson Wright PLLC argued for appellee City of
Scottsdale.

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

After the City of Scottsdale garnished three of his bank accounts,

debtor Mark E. Stuart filed a chapter 13[1] petition. Mr. Stuart argued that the automatic stay required the City to lift the garnishment immediately. Relying on *City of Chicago v. Fulton*, 141 S. Ct. 585 (2021), the bankruptcy court ruled against Mr. Stuart. Mr. Stuart appeals, arguing that *Fulton* is inapplicable to this case and that the City engaged in "acts" that violated multiple subsections of § 362(a).

The bankruptcy court correctly held that the City did not violate the automatic stay. We AFFIRM. We publish to explain the effect of *Fulton* on a prepetition bank account garnishment.

## FACTS

### A. Prepetition events

Mr. Stuart has long pursued the City in various "public interest" cases. He lost one such case (the "State Court Action"), and in 2015 the state court awarded the City a final judgment exceeding $30,000 in sanctions and costs, plus interest (the "State Court Judgment"). The Arizona Court of Appeals affirmed the State Court Judgment.

In April 2019, the City served a writ of garnishment on Bank of America ("BOA"), where Mr. Stuart had three accounts. BOA froze the accounts, which held a total of $8,879.95.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Mr. Stuart sought to quash the writ, arguing that the bank accounts were community property not subject to the City's claims. The state court agreed that the State Court Judgment was unenforceable against any community property. However, it noted that Mr. Stuart had previously obstructed discovery, making it impossible for the City to determine the existence and nature of his property, and allowed the City an opportunity to conduct discovery. Before the City could take any further action, Mr. Stuart filed his bankruptcy petition.

## B. Mr. Stuart's bankruptcy case and the City's response

On Saturday, May 4, 2019, Mr. Stuart filed a chapter 13 petition.[2] His attorney contacted BOA by fax dated May 6 (the next business day) and requested that it release the frozen funds. BOA responded the following day that it would retain the funds unless it was directed otherwise by the City or the bankruptcy court.

On May 7, Mr. Stuart's counsel contacted the City and demanded that the City direct BOA to release the frozen funds. The attorney handling the matter was out of town and did not respond immediately. Nevertheless, the City filed a motion to stay litigation in the State Court Action that same day. It requested that "all pending matters in this case, including any scheduled hearings, be stayed pending resolution from [sic] the bankruptcy proceedings." The state court granted the motion.

---

[2] Mr. Stuart apparently faxed a copy of the petition to the City on May 4, a Saturday, but the offices were closed, and the City did not receive it until Monday.

Also on May 7, Mr. Stuart, proceeding pro se, filed a document informing the state court of the stay and requesting that the state court quash the writ of garnishment.

On May 13, the responsible attorney for the City sent an e-mail to Mr. Stuart's counsel, BOA's counsel, and others. He said that he had been out of the office the previous week and stated that he believed that "the funds being held by the bank pursuant to the garnishment became property of the bankruptcy estate. Accordingly, the City of Scottsdale does not have a current possessory interest in them . . . ." He concluded that "the City will abide whatever disposition of those funds is made in accordance with the Bankruptcy Statutes/Rules."

Counsel for BOA responded that he would direct BOA to release the funds once the City quashed the writ of garnishment. Counsel for the City wrote back that "[t]he City has requested a stay of the proceedings in state court. The City does not oppose release of the funds by the Bank."

The City also filed a response to Mr. Stuart's request to quash the writ. It took the position that the court should "deny Stuart's request as the court has already provided Stuart to [sic] the relief which he is entitled, i.e., a stay of the proceedings. However, the City does not oppose release of the funds by [BOA] and does not object to a court order instructing [BOA] to release the funds." It argued that, under § 362(a), it was not required to dismiss the garnishment proceedings, only to stay them, which the court had already done. Because funds had not left Mr. Stuart's accounts, there

4

was nothing to "return." Nevertheless, it repeated that it "does not object to an order from this Court authorizing [BOA] to release any hold on funds that may have arisen as a result of the garnishment."

On May 14, the state court issued a minute order that: (1) granted Mr. Stuart's request to quash the writ; (2) denied the City's request for a stay, because all matters were previously stayed; and (3) denied Mr. Stuart's request for a return of the funds, because the monies remained in his accounts. BOA unfroze the three bank accounts shortly thereafter.

## C. The motions for sanctions for the City's stay violation

Mr. Stuart filed a motion for sanctions ("Stay Violation Motion") against the City[3] based on the alleged violation of the automatic stay.[4] He asserted that there was no dispute that the City knew of the automatic stay yet refused to dismiss the state court garnishment action. He argued that the City had an affirmative duty to remedy the violation by releasing the frozen account funds. He alleged that the garnishment and the stay violation caused him and his wife severe psychological distress, including anxiety, depression, and sleeplessness.

The City objected to the Stay Violation Motion. It argued that it never

---

[3] Mr. Stuart also sought sanctions against the City's attorneys. In the remainder of this opinion, the term "City" generally includes its attorneys.

[4] The Stay Violation Motion was the third such motion filed by Mr. Stuart against the City. The BAP affirmed the bankruptcy court's denial of his previous motions. *Stuart v. City of Scottsdale (In re Stuart)*, BAP No. AZ-19-1332-LBT, 2020 WL 4334120 (9th Cir. BAP July 28, 2020).

held the garnished funds and never took any action after the bankruptcy filing, including continuing the garnishment action or exercising control over estate property. It contended that BOA held the funds and that the City had done all that was required of it, i.e., move to stay the State Court Action. It was not required to dismiss any judicial action, only "maintain the status quo ante." It pointed out that Mr. Stuart did not identify any act that violated the automatic stay. The City took the position that it had "nothing to do with" the return of the frozen funds and stated (falsely) that it had "filed a request to quash the writ."

Mr. Stuart filed a reply brief and asserted that sanctions were warranted under § 362(a)(1), (2), (3), and (6).

At the hearing on the Stay Violation Motion, the bankruptcy court recognized that the City immediately sought to stay the State Court Action but nevertheless faulted the City for not seeking to quash the writ of garnishment. The bankruptcy court cited an unpublished Ninth Circuit decision, *Best Service Co. v. Bayley (In re Bayley)*, 678 F. App'x 593 (9th Cir. 2017), for the proposition that the City violated the automatic stay "by failing to promptly direct Bank of America to return the funds and/or promptly requesting the writ be quashed . . . ." It said that its decision was a "preliminary ruling" subject to an evidentiary hearing to determine damages.

The court entered a minute order determining that the City violated the automatic stay ("Stay Violation Ruling"). It allowed Mr. Stuart to

proceed with an evidentiary hearing for a determination of damages against the City and its attorneys in the State Court Action.[5]

Mr. Stuart filed a motion for sanctions ("Sanctions Motion") under § 362(k) against the City and two of its attorneys. He sought damages for physical and psychological distress for himself and his non-debtor wife, Virginia Stuart, as well as costs associated with the Stay Violation Motion, totaling $20,783. Additionally, he requested $30,000 in punitive damages and attorneys' fees and costs. The City opposed the motion.

**D.     The City's motion for reconsideration**

Prior to the hearing, the City filed a motion for reconsideration ("Reconsideration Motion") of the Stay Violation Ruling under Civil Rule 60(b), made applicable in bankruptcy via Rule 9024. It argued that the U.S. Supreme Court's recent *Fulton* decision "clarified that the mere retention of property post-petition does not comprise a violation of the automatic stay as a matter of law." It contended that *Fulton* dictated that the City needed only to refrain from disturbing the status quo and was not required to release the garnished funds or direct BOA to release the funds.

Mr. Stuart opposed the Reconsideration Motion, arguing that *Fulton*'s narrow holding under § 362(a)(3) was inapplicable to this case because the City denied ever possessing Mr. Stuart's property. Rather, Mr. Stuart

---

[5] The bankruptcy court held that the City's bankruptcy counsel did not violate the automatic stay and entered a separate order denying the Stay Violation Motion as to them. That order is not part of this appeal.

7

focused on the continuation of the writ of garnishment, which he contended was an act to collect and enforce the State Court Judgment under § 362(a)(1), (2), (3), and (6).

The bankruptcy court held a hearing on the Reconsideration Motion. It took the matter under advisement and issued a supplemental minute entry/order granting the Reconsideration Motion. It noted that "the crux of its [Stay Violation Ruling] was that the City of Scottsdale had an affirmative duty to ensure the release of funds frozen by Bank of America based on the City of Scottsdale's pre-petition garnishment action." It clarified that its "focus was on the retention of estate property as being in violation of the stay" and that "the Court ruled that the City of Scottsdale's failure to direct or otherwise secure release of the frozen funds violated the stay under § (a)(3)." It held that, "[u]nder *Fulton* that conclusion is now wrong. . . . [M]ere retention of an estate asset is not an act in violation of § 326(a)(3) [sic] and there is no requirement that an entity take affirmative action 'to relinquish control of the debtor's property at the moment a bankruptcy petition is filed.'" (Quoting *Fulton*, 141 S. Ct. at 591.)

The bankruptcy court then examined subsections (a)(1), (2), (3), and (6) and declined to find any stay violation.

As to subsection (a)(1), the bankruptcy court held that *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002), did not help Mr. Stuart's position because the duty under subsection (a)(1) is to discontinue an action. It noted that the City promptly sought a stay of the State Court

8

Action upon learning of the petition and only opposed the motion to quash the writ, requesting instead that the matter remain stayed. It further rejected his argument that garnishment actions are different from other collection actions.

Regarding subsection (a)(2), the court held that the City's failure to quash the writ was not an act to enforce a judgment. It distinguished *Bayley*, which it earlier relied on, because the City did not direct any third party to retain estate property and did not take any other "act" to compel or enforce the State Court Judgment. It stated that the City "ceased ongoing collection activities."

Regarding subsection (a)(3), the court held that the City did not "obtain possession" of estate property. It stated that Mr. Stuart failed to explain what the City did to "obtain possession" of the frozen funds and that he could have sought turnover of the funds under § 542.

Finally, the court held that subsection (a)(6) was equally inapplicable because the refusal to dismiss a lawsuit was not an "act to collect a claim." The City did not take any action other than to request a stay of the proceedings, and the mere retention of property is not an "act."

The bankruptcy court thus entered an order ("Reconsideration Order") that granted the Reconsideration Motion, vacated its earlier minute order, and denied the Stay Violation Motion.[6]

---

[6] While the Sanctions Motion was pending, Mr. Stuart filed a motion for leave to amend to add Mrs. Stuart as a party. The court's Reconsideration Order denied that

9

Mr. Stuart timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred by holding that the City did not violate the automatic stay.

## STANDARDS OF REVIEW

The City styled its motion as a motion for reconsideration under Rule 9024, and the bankruptcy court applied the incorporated standards of Civil Rule 60(b). But, as the bankruptcy court acknowledged, the Stay Violation Ruling was not a final order because it did not decide the question of damages. Rule 9024 therefore did not apply. The bankruptcy court was free to review and change its own interlocutory order whether or not Rule 9024 permitted it to do so. *See City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001) ("Although [Civil] Rule 60(b) has since changed, the lessons learned from our interpretation of it have not – a district court's authority to rescind an interlocutory order over which it has jurisdiction is an inherent power rooted firmly in the common law and is not abridged by the Federal Rules of Civil Procedure.").

Therefore, we review the Reconsideration Order de novo. *Yellow*

---

motion. Mr. Stuart does not challenge that part of the order on appeal.

*Express, LLC v. Dingley (In re Dingley)*, 514 B.R. 591, 595 (9th Cir. BAP 2014) ("A bankruptcy court's determination that the automatic stay was violated is a question of law subject to de novo review."), *aff'd on other grounds*, 852 F.3d 1143 (9th Cir. 2017). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review the court's underlying factual findings for clear error. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

## DISCUSSION

**A.    The filing of a bankruptcy petition stays certain postpetition actions.**

The automatic stay "is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d 1168, 1173 (9th Cir. 2014) (quoting *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993)).

The subsections of § 362(a) describe the actions that are subject to the

automatic stay. In this case, Mr. Stuart alleges that the City violated subsections (1), (2), (3), and (6). As is relevant to this case, those sections provide that the filing of a bankruptcy petition creates a stay of:

(1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

§ 362(a).

Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." "A willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional." *Eskanos & Adler, P.C.*, 309 F.3d at 1215.

12

**B.** **The bankruptcy court correctly held that, under *Fulton,* the City did not violate § 362(a)(3).**

The bankruptcy court held that, under *Fulton,* the City did not violate § 362(a)(3) when it failed to move to quash the writ of garnishment or cause BOA to unfreeze the bank accounts. We discern no error.

Prior to *Fulton,* this circuit interpreted § 362(a)(3) to require the creditor to take affirmative steps to turn over property of the estate, even if it is held by a third party. In an unpublished decision, the Ninth Circuit held:

> Upon the filing of Bayley's bankruptcy petition, Best Service had an affirmative duty to turn over all property to the bankruptcy estate, even if it was in the Sheriff's possession. *See Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.),* 98 F.3d 1147, 1151 (9th Cir. 1996); *Knaus v. Concordia Lumber Co. (In re Knaus),* 889 F.2d 773, 775 (8th Cir. 1989). However, by directing the Sheriff to hold the levied funds, Best Service both "enforce[d]" its pre-petition judgment, *see* 11 U.S.C. § 362(a)(2), and "exercise[d] control over property of the estate," *see id.* § 362(a)(3). Best Service should have "cease[d] its collection procedures and notif[ied] the Sheriff to return [Bayley's] property." *In re Hernandez,* 468 B.R. 396, 405 (Bankr. S.D. Cal. 2012). But because it did not, the district court properly concluded that Best Service was in violation of the automatic stay.

*In re Bayley,* 678 F. App'x 593. The *Bayley* decision cited *Del Mission,* in which the Ninth Circuit held that "the knowing retention of estate property violates the automatic stay of § 362(a)(3)[,]" 98 F.3d at 1151, and that the state's knowing retention of disputed taxes violated the automatic stay, *id.*

13

at 1152.

In the consolidated cases addressed in *Fulton*, the City of Chicago impounded the debtors' vehicles for nonpayment of fines. The debtors filed chapter 13 petitions and requested that the city return their vehicles, but the city refused. The bankruptcy court held that the city's refusals violated § 362(a)(3) because it had acted to "exercise control over" the debtors' vehicles, and the Court of Appeals for the Seventh Circuit affirmed. 141 S. Ct. at 589.

The Supreme Court began its analysis by looking at the plain language of the statute. It stated:

> The language used in § 362(a)(3) suggests that merely retaining possession of estate property does not violate the automatic stay. Under that provision, the filing of a bankruptcy petition operates as a "stay" of "any act" to "exercise control" over the property of the estate. Taken together, the most natural reading of these terms – "stay," "act," and "exercise control" – is that § 362(a)(3) prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed.

*Id.* at 590. It then said that the individual words suggested "that § 362(a)(3) halts any affirmative act that would alter the status quo as of the time of the filing of a bankruptcy petition." *Id.*[7]

The Court pointed to § 542, which concerns turnover of estate

---

[7] The Court acknowledged that an omission can be an "act" in some contexts but maintained that "the language of § 362(a)(3) implies that something more than merely retaining power is required to violate the disputed provision." 141 S. Ct. at 590.

property, in support of its decision. It stated that § 542 "would be surplusage if § 362(a)(3) already required an entity affirmatively to relinquish control of the debtor's property at the moment a bankruptcy petition is filed." *Id.* at 591. Rather, it clarified that "§ 362(a)(3) prohibits collection efforts outside the bankruptcy proceeding that would change the status quo, while § 542(a) works within the bankruptcy process to draw far-flung estate property back into the hands of the debtor or trustee." *Id.*

The Court rejected the notion that § 362(a)(3) contained "an affirmative turnover obligation," instead holding that the reference to exercise of control "simply extended the stay to acts that would change the status quo with respect to intangible property and acts that would change the status quo with respect to tangible property without 'obtain[ing]' such property." *Id.* at 592. The Court concluded "that mere retention of estate property after the filing of a bankruptcy petition does not violate § 362(a)(3) of the Bankruptcy Code." *Id.*[8]

*Fulton* cited the Ninth Circuit's decision in *Del Mission* as a case on one side of the circuit split that the Court resolved. *Id.* at 590 n.1. Because the Court adopted the view of the courts on the other side of the split, *Fulton* overruled *Del Mission* and other decisions taking the same position, such as *Bayley*.

---

[8] The Court explicitly limited its holding to § 362(a)(3), 141 S. Ct. at 592, and Justice Sotomayor stated in her concurrence that the Court did not decide whether the city's actions violated any other subsection of § 362(a), *id.* (Sotomayor, J., concurring).

The bankruptcy court here held that its Stay Violation Ruling was at odds with *Fulton*. It clarified that the Stay Violation Ruling was based on a violation of § 362(a)(3) for the City's failure to affirmatively seek to quash the writ of garnishment and unfreeze the three bank accounts. It had cited *Bayley* in support of its decision, which in turn relied on *Del Mission*. We agree with the bankruptcy court that its initial holding was no longer viable after *Fulton*. Simply stated, the City's inaction did not violate § 362(a)(3).

The bankruptcy court for the Middle District of Pennsylvania recently reached the same conclusion on similar facts. In *Margavitch v. Southlake Holdings, LLC (In re Margavitch)*, Case No. 5:19-bk-05353-MJC, 2021 WL 4597760 (Bankr. M.D. Pa. Oct. 6, 2021), the creditors served a prepetition writ of execution on the debtor's bank that froze his bank accounts. When the debtor filed a chapter 13 petition, the creditors refused to release the funds or otherwise terminate the attachment lien but took no other action to collect on the debt. The debtor sought sanctions for violation of the automatic stay. *Id.* at *2.

On cross-motions for summary judgment, the bankruptcy court held that *Fulton* dictated that the creditors' inaction did not violate the automatic stay. Considering § 362(a)(3), the court held that:

> Defendants admittedly took no post-petition affirmative action as to the garnished accounts. They maintained the status quo as of the petition date. They were not required to withdraw the attachment because to do so would put them in a more

16

disadvantageous position than they had been as of the petition date and they were entitled to maintain the status quo.

*Id.* at *6 (citations omitted). The bankruptcy court further considered the other subsections of § 362(a) and concluded that the creditors' inaction did not amount to a stay violation.

*Margavitch* is directly on point and comports with our analysis here. Where a creditor has executed a prepetition writ of garnishment against a debtor's bank account, it is under no affirmative obligation to release the funds and need only maintain the status quo.

Mr. Stuart attempts to distinguish *Fulton* by arguing that it applied only to the exercise of control over estate property,[9] while the stay violation in this case arose from the City's opposition to his efforts to quash the writ of garnishment.

Mr. Stuart is correct, but only to a point. It is true that *Fulton* considered only the retention of estate property under § 362(a)(3). However, *Fulton* dictates that the City had no affirmative duty to ensure the return of estate property to Mr. Stuart.

## C.  The bankruptcy court did not err in holding that the City did not otherwise violate the automatic stay.

We agree with the bankruptcy court that the City did not violate any

---

[9] Mr. Stuart argues that *Fulton* cannot apply, because the City never had physical possession of the bank account funds. We reject this argument; nothing in § 362(a)(3) requires actual or physical possession of estate property. *See In re Margavitch*, 2021 WL 4597760, at *6 (rejecting this exact argument).

other subsection of § 362(a).

**1.  The City did not "continue" a proceeding against Mr. Stuart under § 362(a)(1).**

Section 362(a)(1) prohibits the "continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . ." Mr. Stuart thinks that, in order to avoid the "continuation of" its action against him, the City had to quash the garnishment. We disagree.

In *Eskanos & Adler*, *P.C.*, the Ninth Circuit held that a creditor must "dismiss or stay" pending collection actions:

> The continuation against judicial actions includes the maintenance of collection actions filed in state court. . . . A party violating the automatic stay, through continuing a collection action in a non-bankruptcy forum, must automatically **dismiss or stay such proceeding** or risk possible sanctions for willful violations pursuant to § 362(h).

309 F.3d at 1214 (emphasis added). The court emphasized that "the automatic stay requires an immediate freeze of the status quo by precluding and nullifying post-petition actions." *Id.*

This leaves the question whether it is sufficient to simply stay a case or whether dismissal is required. In the *Eskanos* case, the creditor filed a new action against the debtor after the petition date. The Ninth Circuit repeatedly referred to it as a "post-petition collection action." *Id.* at 1213. In such a case, the creditor has disturbed the status quo existing at the petition date by filing a new lawsuit. In order to restore the status quo, the creditor must dismiss the postpetition action. But in this case, the action was

18

pending and the garnishment existed when Mr. Stuart filed his petition. Leaving the action and the garnishment in place did not disturb the status quo. *Cf. Perryman v. Dal Poggetto (In re Perryman)*, --- B.R. ----, BAP No. NC-21-1036-BFS, 2021 WL 4742673, at *3 (9th Cir. BAP Oct. 8, 2021) (holding that a postpetition "'continuance' or status hearing in a stayed nonbankruptcy proceeding" is not a "continuation of a judicial proceeding" under § 362(a)(1) because those "actions did not disturb the status quo"). Therefore, staying the case was sufficient to avoid "continuation" in violation of § 362(a)(1).

The City fulfilled its duty by taking prompt steps to stay the case. Mr. Stuart filed his petition on a Saturday; the City learned of the bankruptcy petition on the following Monday or Tuesday, May 6 or 7; and it filed a motion to stay the State Court Action on Tuesday, May 7.[10]

Mr. Stuart argues that the City "actively objected to the release of funds." This misstates the record. Although the City stated that it opposed quashing the writ of garnishment, it indicated in e-mail correspondence and twice in its response to Mr. Stuart's motion "that it does not oppose release of the funds by [BOA] and does not object to a court order instructing [BOA] to release the funds."

---

[10] Mr. Stuart further argues that the City was "disingenuous" when it filed the motion for stay, because the State Court Action was already stayed by a previous order. To the contrary, the City's actions suggest that it understood its duty to discontinue any prepetition collection action and sought to make clear that it intended to comply with the automatic stay.

Mr. Stuart argues that a creditor has an affirmative obligation to dismiss an existing writ of garnishment. He primarily relies on *In re Mims*, 209 B.R. 746 (Bankr. M.D. Fla. 1997), where the bankruptcy court held that the creditor had an affirmative duty to release bank accounts frozen pursuant to a prepetition writ of garnishment. The court said that "a garnishment action is unique insofar as it requires affirmative action to comply with the requirements of the automatic stay." *Id.* at 748.

In contrast, the bankruptcy court for the Middle District of Pennsylvania held in *Margavitch* that "§ 362(a)(1) was not violated because Defendants did nothing to further or 'continue' the garnishment process. Nothing has been alleged in the record indicating that the status quo was somehow changed regarding the [bank accounts] after the bankruptcy petition was filed." 2021 WL 4597760, at *8.

Neither party has cited any binding Ninth Circuit authority that dictates whether a creditor has an affirmative duty to dismiss a prepetition writ of garnishment under § 362(a)(1), and we have found none. We think that the decision in *Margavitch* comports more closely than *Mims* with the Ninth Circuit's holding in *Eskanos*, which merely requires a creditor to "dismiss or stay" a judicial proceeding. In this case, the City promptly sought a stay of the State Court Action and took no further steps to advance that case. The failure to affirmatively release the frozen bank

account funds, in and of itself, is not a violation of § 362(a)(1). *See id.*[11]

## 2. The City did not seek to enforce a prepetition judgment against Mr. Stuart under § 362(a)(2).

Mr. Stuart contends that the City violated § 362(a)(2) when it sought to enforce the State Court Judgment by continuing the writ of garnishment. We disagree.

Subsection (a)(2) prohibits "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title[.]" § 362(a)(2).

Mr. Stuart again argues that the City opposed his efforts to quash the writ of garnishment. But as we discussed above, the City took no position on whether the state court should order the release of the account funds. The bankruptcy court was correct that the City did not do anything to enforce the State Court Judgment. *See In re Margavitch*, 2021 WL 4597760, at *8 ("[T]he failure to withdraw a valid pre-petition attachment lien cannot be construed as, or equated with, taking an affirmative action to enforce a judgment. The Court concludes that Defendants' passive maintenance of its valid pre-petition attachment lien in no way changed the status quo and

---

[11] Many of Mr. Stuart's arguments conflate a judicial proceeding with the retention of estate property. While discussing subsection (a)(1), he cites cases imposing on creditors an obligation to return property under subsection (a)(3). For example, he relies on both *In re Hernandez*, 468 B.R. 396 (Bankr. S.D. Cal.), *aff'd*, 483 B.R. 713 (9th Cir. BAP 2012), and *In re Johnson*, 262 B.R. 831 (Bankr. D. Idaho 2001). However, those cases cited *Del Mission* and other cases relying on § 362(a)(3) regarding the retention of estate property; those cases were effectively overturned by the U.S. Supreme Court's *Fulton* decision.

therefore, did not constitute a violation of § 362(a)(2).").

Mr. Stuart claims that the City's stated intent clearly indicated that it meant to pursue the State Court Judgment in violation of the automatic stay. The City represented to the state court that it was concerned that, if Mr. Stuart obtained the frozen funds, he could quickly dismiss his bankruptcy case, thus frustrating the purpose of the garnishment. The City's concern with a hypothetical situation is irrelevant; it only reflected the City's desire to maintain the status quo.

Mr. Stuart relies on the Ninth Circuit's unpublished decision in *Bayley*. In that case, the Ninth Circuit upheld the finding of a stay violation under subsection (a)(2), where the creditor "direct[ed] the Sheriff to hold the levied funds . . . ." 678 F. App'x 593. In contrast, in the present case, the City did not direct BOA as to the postpetition disposition of the frozen funds and in fact repeatedly stated that it would not oppose the release of the funds. In other words, unlike in *Bayley*, the City did not take any affirmative action to enforce or further the garnishment.

Similarly, *In re Banks*, 253 B.R. 25 (Bankr. E.D. Mich. 2000), is distinguishable. The creditor obtained relief from the automatic stay but was unaware that the order lifting the stay was itself stayed for ten days pursuant to Rule 4001(a)(3). The creditor obtained and executed on a writ of restitution during the ten-day period and refused to vacate it. In other words, the creditor took action postpetition in violation of the automatic stay (before the bankruptcy court's order lifting the automatic stay went

22

into effect). The bankruptcy court found that the creditor violated § 362(a)(1). *Id.* at 30. In the present case, the City both obtained and executed the writ of garnishment prepetition, which did not violate the automatic stay. It did not take any action postpetition to enforce the writ.

### 3. The City did not take any act to obtain estate property under § 362(a)(3).

Mr. Stuart further argues that the City's state court filings constituted an act to obtain possession of the garnished funds. He contends that the City had power and authority over the frozen funds, so it had an affirmative obligation to withdraw the writ and make the funds available to Mr. Stuart. We agree with the bankruptcy court that the City took no "act" in violation of the automatic stay.

Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"

As the bankruptcy court correctly held, *Fulton* precludes Mr. Stuart's argument that the City took any act to "exercise control over property of the estate." We also agree with the bankruptcy court that the City did not take any "act to obtain possession of property of the estate" when it did not immediately move to quash the writ of garnishment. On the petition date, the City had already obtained the writ of garnishment, and BOA had frozen the three bank accounts. There was no further "act to obtain possession." The City's acts (or omissions) merely preserved the status

23

quo.[12]

### 4. The City did not take any other "act" against Mr. Stuart in violation of § 362(a)(6).

Finally, Mr. Stuart argues that the City's refusal to dismiss the writ of garnishment and desire to freeze the bank accounts indefinitely violated subsection (a)(6). For the reasons discussed above, we disagree.

Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" Mr. Stuart repeats arguments that he raised in connection with the other subsections.

As we explained above, the City did not do anything to enhance its position and only sought to maintain the status quo. *See In re Margavitch*, 2021 WL 4597760, at *7 ("[T]he mere retention of a valid pre-petition state court attachment or lien without more, is not a violation of § 362(a)(4)-(6)."). The City did not take any act to "collect, assess, or recover" a claim against Mr. Stuart, because everything was stayed. Further, it stated multiple times that it did not oppose the release of the frozen funds.

---

[12] We emphasize that the City's garnishment did not capture any more funds postpetition. The result would likely be different, as in certain cases cited by Mr. Stuart, *e.g.*, *In re LeGrand*, 612 B.R. 604 (Bankr. E.D. Cal. 2020), if this were a wage garnishment which attached to the debtor's postpetition wages or a bank account garnishment that encompassed postpetition deposits to the account. Here, neither BOA nor the City was actively collecting any debt from Mr. Stuart; staying the State Court Action and maintaining the freeze on the accounts was merely a continuation of the status quo as it existed on the petition date and collected nothing further from Mr. Stuart.

24

## CONCLUSION

Because the City immediately asked the state court to stay the case and did nothing to change the status quo that existed when Mr. Stuart filed his bankruptcy petition, it did not violate the automatic stay. We AFFIRM.